# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2044-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent-Petitioner, |
| |    v. |
| | Myron C. Dillard, |
| |         Defendant-Appellant. |

REVIEW OF A COURT OF APPEALS DECISION
Reported at 350 Wis. 2d 331, 838 N.W.2d 112
(Ct. App. 2013 – Published)
PDC No.: 2013 WI 108

| | |
|---|---|
| OPINION FILED: | November 26, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 4, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Winnebago |
|   JUDGE: | Scott C. Woldt |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | ROGGENSACK, PROSSER, ZIEGLER, JJJ., dissent. (Opinion filed.) |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the plaintiff-respondent-petitioner, the cause was argued by *Katherine D. Lloyd*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

    For the defendant-appellant, there was a brief and oral argument by *Donna L. Hintze*, assistant state public defender.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2012AP2044-CR
(L.C. No.  2011CF157)

STATE OF WISCONSIN                    :        IN SUPREME COURT

State of Wisconsin,

      Plaintiff-Respondent-Petitioner,

  v.

Myron C. Dillard,

      Defendant-Appellant.

**FILED**

**NOV 26, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals.  *Affirmed.*

¶1   SHIRLEY S. ABRAHAMSON, C.J.   Myron C. Dillard, the defendant, was convicted of armed robbery and sentenced to 25 years of confinement and 15 years of extended supervision after a negotiated plea agreement.  The circuit court for Winnebago County, Scott C. Woldt, Judge, denied the defendant's postconviction motion to withdraw his no-contest plea.  The court of appeals reversed the judgment of conviction and the

circuit court's order denying the defendant's postconviction motion. We now review the decision of the court of appeals.[1]

¶2 Two issues of law are presented:

¶3 The first issue is whether, under the totality of the circumstances, the defendant has the right as a matter of law to withdraw his no-contest plea on the ground that it was not entered knowingly, intelligently, and voluntarily. The basis for the defendant's challenge to his plea is that when he was deciding whether to accept the State's plea offer or go to trial, the State, the court, and the defendant's trial counsel mistakenly advised the defendant that he was facing a mandatory sentence of life in prison without the possibility of extended supervision.

¶4 The second issue is whether, under the totality of the circumstances, the defendant has the right as a matter of law to withdraw his no-contest plea on the ground that he has demonstrated ineffective assistance of counsel. The alleged ineffective assistance of counsel is that defendant's trial counsel mistakenly advised the defendant that he was facing a mandatory sentence of life in prison without the possibility of extended supervision if he did not accept the State's plea offer.

¶5 The error of law in the instant case, which permeated the entire proceeding and which is the basis of the defendant's

---

[1] State v. Dillard, 2013 WI App 108, 350 Wis. 2d 331, 838 N.W.2d 112.

claims, was the State's erroneous attachment of a persistent repeater enhancer to the armed robbery charge.

¶6 If the defendant had been convicted of armed robbery under the persistent repeater statute, he would have faced a mandatory sentence of life in prison without the possibility of extended supervision. It is undisputed that the defendant did not meet the criteria for being a persistent repeater. The error did not come to light until after sentencing. Thus, the State, the court, the defendant's trial counsel, and the defendant proceeded under the mistaken belief that the persistent repeater enhancer applied to the defendant and that he therefore could have faced a mandatory life sentence if he did not accept the State's offer and enter a plea.

¶7 The circuit court denied the defendant's postconviction motion to withdraw his no-contest plea, holding that the plea was knowing, intelligent, and voluntary and that the defendant did not receive ineffective assistance of counsel.

¶8 The court of appeals reversed the judgment of conviction and the circuit court's order denying the defendant's postconviction motion to withdraw his no-contest plea. It remanded the matter to the circuit court to allow the defendant to withdraw his plea. The court of appeals concluded that the defendant's plea was not knowing, intelligent, and voluntary and that the defendant received ineffective assistance of counsel.

¶9 With regard to the first issue, we conclude that the defendant has proved that the no-contest plea was not knowing, intelligent, and voluntary and thus that the matter should be

3

remanded to the circuit court to allow the defendant to withdraw his no-contest plea.

¶10 Although the matter is resolved on the first issue, we also address the second issue. We conclude that the defendant has proved that he received ineffective assistance of trial counsel and thus that the matter should be remanded to the circuit court to allow the defendant to withdraw his no-contest plea.

¶11 Accordingly, the decision of the court of appeals is affirmed.

I

¶12 For purposes of this review, the following facts and procedural history are not in dispute.

¶13 This case arises out of an armed robbery that took place in December 2009 in Menasha, Wisconsin. The victim was sitting in her car in a shopping center parking lot when a man opened the passenger-side door and entered her vehicle. He put a gun up to the victim's arm and told her to begin driving. He also told the victim to hand over her cash, which she did. The man directed the victim to pull the car over near some apartments. He then informed her he would exit the vehicle. He instructed her to count to 30 after he exited and then to drive away.

¶14 The victim cooperated with law enforcement to identify the man who robbed her. First, she helped investigators develop a composite sketch of the man. The defendant was on probation at the time of the robbery. His probation agent thought the

4

composite sketch resembled the defendant. However, when the victim was provided with a photo array that included a photo of the defendant, she did not recognize him as the robber.

¶15 Several months later, the victim saw a photograph of the defendant while looking through an online sex offender database. This photograph was the same one the victim had viewed in the photo array. The victim contacted the police and said she believed the defendant was the man who robbed her.

¶16 The defendant was arrested and charged with two counts: armed robbery in violation of Wis. Stat. § 943.32(2) (2011-12),[2] with a persistent repeater enhancer pursuant to Wis. Stat. § 939.62, and false imprisonment in violation of Wis. Stat. § 940.30, with a repeater enhancer pursuant to Wis. Stat. § 939.62.

¶17 Had the defendant been convicted of armed robbery as a persistent repeater, he would have faced a mandatory sentence of life in prison without the possibility of extended supervision.

¶18 Had the defendant been convicted of armed robbery and of false imprisonment as a repeater, without the persistent repeater enhancer erroneously attached to the armed robbery charge, he would have faced a maximum sentence of 32 years of confinement and 18 years of extended supervision.

¶19 The State offered a plea agreement in which the persistent repeater enhancer was dropped, as was the false

---

[2] All references to the Wisconsin Statutes are to the 2011-12 version unless otherwise noted.

imprisonment charge. The defendant agreed to plead to the charge of armed robbery without any penalty enhancer.

¶20 The plea colloquy in the present case correctly informed the defendant of the penalty for armed robbery without a penalty enhancer.

¶21 Adhering to the plea agreement, the prosecutor recommended a sentence of eight years' initial confinement with an open term of extended supervision. A presentence investigation report (PSI) recommended a sentence of 10 to 11 years of confinement and five to six years of extended supervision.

¶22 The plea agreement permitted the defendant to argue for a more lenient sentence. The defendant's trial counsel urged the circuit court to impose a sentence of five years' initial confinement to run consecutive to a sentence the defendant was then serving. Trial counsel further requested "a lengthy term of extended supervision."

¶23 The circuit court sentenced the defendant to a bifurcated sentence of 25 years of initial confinement and 15 years of extended supervision.

¶24 Again, the error of law pervading these proceedings was the attachment of the persistent repeater enhancer to the armed robbery charge against the defendant.

¶25 From the defendant's initial appearance through sentencing, the court, the prosecuting attorney, and the defendant's trial counsel all advised the defendant that he was subject to the persistent repeater enhancer.

¶26 At the defendant's initial appearance, prior to the appointment of defense counsel, the court commissioner twice informed the defendant that the criminal complaint alleged that he is a persistent repeater subject to life imprisonment without the possibility of parole.[3] The court commissioner stated and then restated:

> The Court: It is alleged in Count 1 of the criminal Complaint that you've committed the offense of armed robbery. It is alleged that you would be a persistent repeater as that term is defined under the Wisconsin State Statutes, that would therefore subject you, if convicted on the persistent repeater, of life imprisonment without the possibility of parole.

¶27 At the preliminary hearing, the court commissioner again referenced the persistent repeater enhancer, telling the defendant that "there is the persistent repeater enhancer on Count 1 so there is significant incarceration and penalties involved in regards to this case." Neither the prosecuting attorney nor the defendant's trial counsel corrected this mistake of law.

¶28 At sentencing, after the persistent repeater enhancer had been dismissed by the State and only the armed robbery charge remained, the circuit court referenced the mandatory life sentence the defendant would have faced if convicted of armed robbery as a persistent repeater.

---

[3] See Wis. Stat. § 757.69 (stating the powers of court commissioners).

7

¶29 The prosecutor misinformed the court and the defendant that the defendant was subject to the persistent repeater enhancer.

¶30 At the initial appearance, in requesting a $100,000 cash bond, the prosecutor noted that the defendant "qualifies as a persistent repeater. If he gets convicted of Count 1 that's life without parole."

¶31 On March 21, 2011, after the preliminary examination, the State filed an information that included the persistent repeater enhancer.

¶32 As we explain more fully later, the defendant's trial counsel advised the defendant that he was subject to the persistent repeater enhancer and therefore faced mandatory life imprisonment without extended supervision. Trial counsel based her advice to the defendant about accepting the plea agreement on this mistaken view of the law.

¶33 That the persistent repeater enhancer was an error of law, that is, a legal impossibility, did not come to light until after sentencing.

II

¶34 We first address whether, under the totality of the circumstances, the defendant has the right as a matter of law to withdraw his no-contest plea on the ground that it was not entered knowingly, intelligently, and voluntarily. The basis for the defendant's challenge to his plea is that when he was deciding whether to accept the State's plea offer or go to trial, the State, the court, and the defendant's trial counsel

mistakenly advised the defendant that he was facing a mandatory sentence of life in prison without the possibility of extended supervision.

¶35 We agree with the court of appeals that "the fundamental error of law [about the applicability of the persistent repeater enhancer to the defendant] that pervaded the plea negotiations and sentencing" rendered the defendant's plea unknowing, unintelligent, and involuntary.[4]

¶36 The applicable standard of review is as follows: To withdraw a guilty plea after sentencing, a defendant must show by clear and convincing evidence that a refusal to allow withdrawal of the plea would result in manifest injustice, that is, that there are "serious questions affecting the fundamental integrity of the plea."[5] The defendant has the burden to establish manifest injustice.[6]

---

[4] Dillard, 350 Wis. 2d 331, ¶21.

[5] State v. Denk, 2008 WI 130, ¶71, 315 Wis. 2d 5, 758 N.W.2d 775.

[6] State v. Bentley, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996).

In past cases, the court has recited that the clear and convincing evidence standard applies to the defendant's burden of proving manifest injustice, without distinguishing between the various ways that manifest injustice can be proven. We apply the clear and convincing evidence standard in the present case.

¶37 There are several ways a defendant may demonstrate manifest injustice.[7] One way is to show that the defendant did not enter the plea knowingly, intelligently, and voluntarily.[8] A plea that was "not entered knowingly, voluntarily, and intelligently violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right."[9]

¶38 Whether a defendant's plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact.[10] An appellate court upholds the circuit court's findings of historical facts unless they are clearly erroneous.[11] An appellate court independently determines whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary, benefiting from the analyses of the circuit court and court of appeals.[12]

¶39 In numerous cases, the court has held that affirmative misinformation about the law provided by the prosecutor and

---

[7] State v. Cain, 2012 WI 68, ¶26, 342 Wis. 2d 1, 816 N.W.2d 177.

[8] State v. Brown, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906.

[9] State v. Cross, 2010 WI 70, ¶14, 326 Wis. 2d 492, 786 N.W.2d 64.

[10] Cross, 326 Wis. 2d 492, ¶14; Bentley, 201 Wis. 2d at 311.

[11] State v. Dawson, 2004 WI App 173, ¶7, 276 Wis. 2d 418, 688 N.W.2d 12.

[12] State v. Hoppe, 2009 WI 14, ¶61, 317 Wis. 2d 161, 765 N.W.2d 794.

defense counsel can support a holding that withdrawal of a plea of guilty or no contest must be permitted because the plea is uninformed and its voluntariness is compromised.[13]    Appellate

---

[13] See, e.g., State v. Riekkoff, 112 Wis. 2d 119, 332 N.W.2d 744 (1983) (holding that when the defendant pled guilty incorrectly believing he could seek appellate review of an evidentiary order, he misunderstood the effects of his plea and the plea was therefore involuntary); State v. Brown, 2004 WI App 179, 276 Wis. 2d 559, 687 N.W.2d 543 (holding that when the State promised to drop, but did not drop, all charges requiring the defendant to register as a sex offender or subjecting the defendant to Chapter 980 civil confinement, the defendant's plea was involuntary); Dawson, 276 Wis. 2d 418 (holding that the legally unenforceable reopen-and-amend provision of the defendant's plea deal rendered the plea involuntary); State v. Woods, 173 Wis. 2d 129, 496 Wis. 2d 144 (Ct. App. 1992) (holding that a guilty plea entered at least in part based on inaccurate legal information about sentencing was neither knowing nor voluntary).

courts at the state[14] and federal[15] levels have similarly concluded that misinformation given to a defendant about the consequences of conviction may warrant withdrawal of a guilty plea.

¶40 In determining whether a similar holding is appropriate here, we review the totality of the circumstances,

---

[14] See, e.g., Reeves v. State, 564 N.E.2d 550, 553 (Ind. Ct. App. 1991) (trial counsel's recommendation that Reeves "accept the plea agreement to avoid being charged as an habitual offender——when Reeves was not habitual eligible" rendered the plea involuntary); Nash v. State, 429 N.E.2d 666, 672 (Ind. Ct. App. 1981) ("In the instant case, Nash was a 30 year old man facing a possibility of a substantial amount of time being tacked on to his sentence by virtue of the improper habitual offender counts. Even if we accept the proposition that this was not the 'main' motivation for his guilty plea, the uncontradicted testimony leads unerringly to the conclusion that it played a significant part in the plea negotiations and therefore rendered the bargain illusory."); People v. Graves, 523 N.W.2d 876, 878 (Mich. Ct. App. 1994) ("Because there is a legal bar to conviction on the charge that was dismissed pursuant to the plea bargain, and defendant's plea was induced by a promise to forgo that charge, defendant was misinformed concerning the benefit of his plea. Thus, defendant is entitled to withdraw his guilty plea as not having been understandingly and voluntarily made."); People v. Lawson, 255 N.W.2d 748, 750 (Mich. Ct. App. 1977) ("Since defendant surrendered his right to trial in apparent misapprehension of the value of commitments made to him, he should be allowed to withdraw his plea.").

[15] See, e.g., Hammond v. United States, 528 F.2d 15, 19 (4th Cir. 1975) ("Where, as here, counsel's alleged advice, corroborated by the information supplied by the court, grossly exaggerated the benefit to be derived from the pleas of guilty, it would follow that the pleas were not voluntary.").

12

including the record of the postconviction hearing at which only the defendant and his trial counsel testified.[16]

¶41 The defendant testified at the postconviction hearing that, early on, he intended to go to trial because he believed the State's case was weak. The main weakness of the State's case, in the defendant's opinion, was the victim's failure to identify him when provided with a photo array that included his photo. The State acknowledged this weakness of its case.

¶42 The prosecuting attorney explained at the sentencing hearing that the State had agreed to recommend the sentence it did in exchange for the defendant's plea "because there were some underlying factual burdens that were going to be difficult for the State. . . . [I]dentity may have been a problem . . . ."

¶43 In addition, the State's reply brief in this court acknowledges that "it can be problematic to show an eye witness a photo of a suspect during a subsequent photo array when the witness has previously seen, and failed to identify, that photo at a previous array."[17]

---

[16] The hearing on the defendant's postconviction motion was a Machner hearing. See State v. Machner, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (1979). Several cases discuss the allegations required in a postconviction motion seeking plea withdrawal to entitle a defendant to a Machner hearing on the ground that the plea resulted from ineffective assistance of counsel. See, e.g., Bentley, 201 Wis. 2d at 316; State v. Saunders, 196 Wis. 2d 45, 48, 538 N.W.2d 546 (Ct. App. 1995). The defendant's motion in the present case was obviously sufficient under these cases. A Machner hearing took place.

[17] Reply Brief of Plaintiff-Respondent-Petitioner at 11.

¶44 The defendant testified that, in spite of his initial intention to go to trial, when he considered the possibility of receiving a sentence of life in prison without extended supervision he decided he "couldn't take that chance." The defendant thus entered a no-contest plea because, in his words, "even though there's not a lot of proof, I can't take the chance of not coming out . . . . I mean life without parole is life without parole . . . it's just too much."

¶45 The defendant further testified that the greatest benefit of the plea deal was "getting rid of the persistent repeater." He stated that he entered the plea to "make the life without parole go away so that I could get myself a chance to get out."

¶46 The defendant acknowledged that he might not have filed a postconviction motion for plea withdrawal if he had received the sentence the State recommended. He nonetheless insisted that the dropped persistent repeater enhancer was his main reason for accepting the plea offer and that the inapplicability of that enhancer rendered his plea involuntary.

¶47 The defendant's trial counsel confirmed the defendant's declarations to a large extent. Trial counsel testified that the defendant had expressed a strong desire for the "opportunity for a life on the outside with his wife"; that prior to receiving the State's plea offer, the defendant never said he did not want to go to trial; and that trial counsel knew the defendant was greatly concerned about the persistent repeater enhancer.

14

¶48 Trial counsel further testified that the State's offer to drop the persistent repeater enhancer was the most significant factor motivating her recommendation that the defendant accept the plea deal. A letter trial counsel sent the defendant after the State made its plea offer corroborates this testimony. The letter was entered into evidence at the postconviction hearing. It states:

> If convicted on count one as alleged, you would face life in prison with *NO POSSIBILITY* of parole or extended supervision. . . . The State is recommending that you plead to count one, *without the persistent repeater*. . . .
>
> In light of the State's willingness to dismiss the persistent repeater in count one and to dismiss outright the charge of false imprisonment in count two, I believe that it is in your best interest to give serious consideration to the State's offer. You are still able to argue for a lower sentence through me, however you would not face life in prison if convicted.

(Emphasis in original.)

¶49 Trial counsel also testified that she would have advised the defendant to enter the plea agreement regardless of the persistent repeater enhancer. Trial counsel considered the State's offer to recommend just eight years' initial confinement a good deal for the defendant.

¶50 In the letter quoted above, trial counsel explained that if the defendant chose to go to trial, the State intended to introduce other acts evidence of the defendant's past convictions, which involved multiple counts of armed robbery and sexual assault. Trial counsel advised the defendant that this

evidence, along with evidence that the victim identified him as a result of looking at a sex offender database, would be "very devastating" to his case. Trial counsel informed the defendant that the victim made a very credible witness.

¶51 Finally, trial counsel testified that, in her view, the defendant agreed to plead no contest based on the totality of the circumstances, not just the dropped penalty enhancer.

¶52 The defendant presented a persuasive account (including his testimony, that of defense counsel, and trial counsel's letter to the defendant) of why, absent the misinformation he received about the persistent repeater enhancer, he would not have entered a no-contest plea, why he would have gone to trial, and why the no-contest plea was not knowing, intelligent, and voluntary.

¶53 The State points to several parts of the record to support its contention that, regardless of the mistake of law regarding the applicability of the persistent repeater enhancer to the defendant, he would have accepted the State's plea offer. The State argues there were multiple factors at play, including the potential admission of other acts evidence and the apparent credibility of the State's main witness (the victim).

¶54 The State emphasizes trial counsel's statement that she believed the defendant accepted the plea offer based on "the totality of the circumstances," which included the potential admission of other acts evidence and the apparent credibility of the State's main witness (the victim). But the State acknowledges that trial counsel also identified the dropped

persistent repeater enhancer as "the most significant factor" contributing to the defendant's decision to enter a plea of no contest.

¶55 The State also points to trial counsel's statement that she would have advised the defendant to enter a plea regardless of the dropped enhancer. In contrast, the defendant's testimony supports the conclusion that the defendant would not have heeded his counsel's advice to accept the plea agreement if he had known the persistent repeater enhancer was inapplicable.

¶56 Finally, the State argues the defendant's motivation for moving to withdraw his plea is evidence the plea was knowing, intelligent, and voluntary. The defendant conceded at the postconviction hearing that had he received the sentence the State recommended, he would not now be challenging his plea.

¶57 The circuit court raised this point at the conclusion of the postconviction hearing, announcing as follows: "[T]he only reason we're here on appeal is because I did not go along with those recommendations and I gave him the maximum sentence. . . . [N]ow that he's got the sentence he doesn't like it and now he wants to appeal it and find a way to do so."

¶58 The State asserts that because the defendant admitted that his dissatisfaction with his sentence drove his decision to challenge the plea, his challenge must fail.

¶59 The court of appeals was not persuaded by the State's arguments. Neither are we.

17

¶60 First, for a defendant to show that a plea was not knowing, intelligent, and voluntary, the case law does not require that the decision to plead no contest be based exclusively on the misinformation the defendant received.[18] Rather, a guilty or no-contest plea is not voluntary unless the defendant is "fully aware of the direct consequences [of his plea], including the actual value of any commitments made to him by the court, prosecutor, or his own counsel . . . ."[19]

¶61 In the instant case, the defendant's no-contest plea was not made with full knowledge of the factors pertinent to a decision regarding whether to plead or proceed to trial. The defendant did not know the actual value of the commitments made to him by the prosecutor in the plea offer.

---

[18] See, e.g., Woods, 173 Wis. 2d 129 (a guilty plea entered at least in part based on inaccurate legal information about sentencing was neither knowing nor voluntary).

[19] The United States Supreme Court stated the standard for voluntariness in Brady v. United States, 397 U.S. 742, 755 (1970), as follows:

> The standard as to the voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit:
>
> "(A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).' 242 F.2d at page 115."

¶62 Second, the defendant repeatedly asserted that eliminating the possibility of receiving a mandatory life sentence was his primary motivation for entering the plea agreement. Trial counsel's testimony supports the defendant's testimony.

¶63 Third, the disparity between the sentence the defendant thought he would face if convicted of armed robbery with a persistent repeater enhancer and the maximum sentence he would have faced without the persistent repeater enhancer attached to the armed robbery charge was significant. According to the court of appeals, "[t]he hope that one will live long enough to have a life outside the prison walls is, as the advertisement goes, priceless." Because the defendant "thought he had to bargain for that hope," he pled no contest.

¶64 At oral argument, Justice Prosser and the State posited that the State could have amended its complaint to attach a repeater enhancer (as opposed to a persistent repeater enhancer) to the armed robbery charge. Had the State done so, the defendant would have faced an additional six years of confinement, for a total of 38 years of confinement.

¶65 The implication of this reasoning is that, for this 51-year-old defendant, there is no significant difference between a maximum sentence of 32 or 38 years in prison and a mandatory sentence of life in prison without the possibility of extended supervision.

¶66 This reasoning overlooks the crucial fact that the statutory penalty of 32 or 38 years in prison represents the

maximum penalty a circuit court may impose. A circuit court may, in its discretion, impose a lesser term of confinement. In contrast, the persistent repeater enhancer imposes life in prison as a mandatory sentence. The circuit court has no choice but to impose that sentence. The possibility that a circuit court may impose a sentence less than the statutory maximum is important to the defendant in deciding whether to enter a plea.

¶67 Fourth, while the sentence imposed by the circuit court may be driving the defendant's pursuit of plea withdrawal, the appropriate inquiry is not into the defendant's motivation for filing the postconviction motion. Rather, the appropriate inquiry is into the defendant's motivation for entering the no-contest plea in the first place. The defendant's subsequent satisfaction or dissatisfaction with his sentence has no bearing on whether his initial decision to enter a plea was knowing, intelligent, and voluntary.

¶68 Fifth, if the defendant's trial counsel were ineffective (and we conclude in Part III that she was ineffective), it follows that the defendant's plea was not knowing, intelligent, and voluntary. "[T]he sine qua non to a voluntary plea of guilty is the assistance of counsel 'within the range of competence required of attorneys representing defendants in criminal cases.'"[20]

---

[20] Hammond, 528 F.2d at 18 (citing Parker v. North Carolina, 397 U.S. 790, 797-98 (1970)).

20

¶69 Considering the totality of the circumstances, we conclude that the defendant entered into the plea agreement without knowing the actual value of the State's plea offer and relying on misinformation from the court, the State, and trial counsel about the applicability of the persistent repeater enhancer. As a result, the defendant was prevented from making a reasoned decision whether to proceed to trial or plead. The misinformation undermined the defendant's capacity to knowingly, intelligently, and voluntarily choose between accepting the State's plea offer and proceeding to trial. Thus, we conclude that the defendant established that he did not knowingly, intelligently, and voluntarily enter the plea of no contest.

¶70 A plea that was "not entered knowingly, voluntarily, and intelligently violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right."[21] The defendant must be permitted to withdraw his no-contest plea.

¶71 Before we turn to the second issue regarding ineffective assistance of counsel, we examine the State's argument that the instant case is governed by State v. Denk, 2008 WI 130, 315 Wis. 2d 5, 758 N.W.2d 775, and that the court of appeals incorrectly applied Denk to the instant case.[22]

---

[21] Cross, 326 Wis. 2d 492, ¶14.

[22] The State asserts that the court of appeals incorrectly applied the Cross case to the instant case. Both the State and the defendant agree that Cross is inapplicable to the instant case. We agree.

(continued)

21

¶72 We briefly state the facts in the Denk case to compare it to the present case.

¶73 Denk was charged with Class I felony possession of methamphetamine, Class H felony possession of drug paraphernalia, misdemeanor possession of marijuana, and misdemeanor possession of drug paraphernalia. Pursuant to a plea agreement, Denk pled no contest to felony possession of methamphetamine. The State dismissed the remaining charges.

¶74 Denk subsequently filed a postconviction motion to withdraw his plea, arguing that "there was no factual basis for charging him with one felony count of possession of methamphetamine paraphernalia [the dismissed charge]. . . and thus, the district attorney's offer to drop the charge provided an illusory benefit."[23] Denk's appellate counsel argued that the methamphetamine paraphernalia in Denk's possession "was intended for personal use," while the statute relating to paraphernalia

---

The defect alleged in Cross was "insubstantial" misinformation about the penalty given to the defendant during the plea colloquy. In contrast, the plea colloquy in the present case correctly informed the defendant of the penalty for armed robbery without a penalty enhancer.

In the present case, unlike in Cross, the defendant's acceptance of the State's proposed plea agreement and the defendant's entry of the plea of no-contest to armed robbery were induced by "significant" misinformation the defendant received prior to the plea colloquy regarding the penalty he would face if he did not accept the State's proposed plea agreement and enter a plea of no contest.

[23] Denk, 315 Wis. 2d 5, ¶23.

22

under which he was charged "related to the manufacture of methamphetamine." Thus, Denk argued that the State's dropping the charge provided an illusory benefit. This court did not allow Denk to withdraw his plea.[24]

¶75 There is a superficial similarity between Denk and the instant case. The two cases are, however, significantly different. The instant case is not a Denk case. It is a case of first impression.

¶76 In short, in Denk the charge that was dismissed pursuant to Denk's plea agreement did not pose a legal or factual impossibility. The Denk court did not decide (and the record did not demonstrate) that there was no factual or legal basis for that charge.

¶77 In Denk, there was a factual and legal dispute about what Denk was doing with the methamphetamine paraphernalia, about whether the State could have proved the dismissed charge beyond a reasonable doubt, and about the proper scope of the

---

[24] Denk distinguished a line of cases in which (1) "the dispute involved the charge to which the defendant actually pled"; (2) "the consequence for which the defendant had bargained when he entered the plea to the charge was a legal impossibility"; and (3) "the defendant failed to understand the inevitable consequences of his plea to that charge, thus rendering his plea . . . involuntary." Denk, 315 Wis. 2d 5, ¶75. These three factors were not set out as the sole prerequisites in all cases to proving a plea was entered unknowingly, unintelligently and involuntarily. Rather, Denk outlined these factors to summarize our prior plea cases involving mistakes of law and legally unenforceable promises by the State.

23

statute applicable to the dismissed felony. The Denk court recognized that it was uncertain whether the State would have prevailed on the dismissed charge. At that stage in the proceeding, however, Denk had not demonstrated that the dismissed charge was a factual or legal impossibility. Denk thus benefitted when the felony drug paraphernalia charge was dropped pursuant to the plea agreement.

¶78 In contrast, it is undisputed in the present case that the persistent repeater enhancer attached to the armed robbery charge could not, as a matter of law, have been applied to the defendant. The law required the State to drop the persistent repeater enhancer. The State's offer to drop the persistent repeater enhancer as part of the plea agreement provided no benefit to the defendant.

¶79 In the present case, the plea offer was significantly less valuable than the defendant believed because the persistent repeater enhancer was a legal impossibility. Dropping the enhancer provided an illusory benefit to the defendant. When entering his plea of no contest, the defendant failed to understand "the actual value" of the plea offer he accepted.

¶80 No prior case has addressed the validity of a guilty or no-contest plea entered to avoid a penalty enhancer attached to a felony charge when that penalty enhancer was indisputably a legal impossibility. The instant case presents a question of first impression. We have addressed that question here.

III

¶81 Although the matter is resolved on the first issue, we turn now to the second issue: Under the totality of the circumstances, did the defendant have the right as a matter of law to withdraw his no-contest plea on the ground that he demonstrated ineffective assistance of counsel? The basis for the defendant's ineffective assistance of counsel claim is that the defendant's trial counsel mistakenly advised the defendant he would face a mandatory sentence of life in prison without the possibility of extended supervision if he did not accept the plea agreement.

¶82 We agree with the court of appeals that the defendant's trial counsel was constitutionally ineffective.

¶83 The applicable standard of review for this issue is the same as for the first issue: To withdraw a guilty plea after sentencing, a defendant must show by clear and convincing evidence that a refusal to allow withdrawal of the plea would result in manifest injustice, that is, that there are "serious questions affecting the fundamental integrity of the

plea . . . ."[25]  There are several ways the defendant can meet this burden of proof.[26]

¶84 One way to demonstrate manifest injustice is to establish that the defendant received ineffective assistance of counsel.[27]  Ineffective assistance of counsel claims are rooted in the United States and Wisconsin constitutions.  Article I, Section 7 of the Wisconsin Constitution and the Sixth Amendment to the United States Constitution (applied to the states by the Fourteenth Amendment) guarantee criminal defendants the right to effective assistance of counsel.

¶85 To show he has been deprived of that right, the defendant must prove (1) that trial counsel's performance was deficient; and (2) that this deficiency prejudiced the defendant.  Strickland v. Washington, 466 U.S. 668 (1984).

¶86 Whether the defendant received ineffective assistance of counsel is a question of constitutional fact.[28]  An appellate

---

[25] Denk, 315 Wis. 2d 5, ¶71.  See also Brown, 293 Wis. 2d 594, ¶18; Bentley, 201 Wis. 2d at 311.

In past cases, the court has recited that the clear and convincing evidence standard applies to the defendant's burden of proving manifest injustice, without distinguishing between the various ways that manifest injustice can be proven.  We apply the clear and convincing evidence standard in the present case.

[26] Cain, 342 Wis. 2d 1, ¶26.

[27] Bentley, 201 Wis. 2d at 311.

[28] State v. Jenkins, 2014 WI 59, ¶38, 355 Wis. 2d 180, 848 N.W.2d 786.

26

court upholds the circuit court's findings of fact unless they are clearly erroneous. "Findings of fact include 'the circumstances of the case and the counsel's conduct and strategy.'"[29] An appellate court independently determines whether those historical facts demonstrate that defense counsel's performance met the constitutional standard for ineffective assistance of counsel, benefiting from the analyses of the circuit court and court of appeals.[30]

¶87 We first explore whether trial counsel's performance was deficient.

¶88 The test for deficiency of performance is objective: Under the totality of the circumstances, did trial counsel's performance fall "outside the wide range of professionally competent assistance"?[31] "Normally, judicial scrutiny of an attorney's performance will be highly deferential."[32]

¶89 The State has not challenged the defendant's contention that trial counsel's performance fell below an objective standard of reasonableness.

¶90 A defendant's decision whether to go to trial or plead no contest (or guilty) is generally the most important decision

---

[29] State v. Thiel, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305

[30] Jenkins, 355 Wis. 2d 180, ¶38.

[31] Strickland v. Washington, 466 U.S. 668, 690 (1984); State v. Smith, 207 Wis. 2d 258, 274, 558 N.W.2d 379 (1997).

[32] Smith, 207 Wis. 2d at 274.

27

to be made in a criminal case.  A defendant should have the benefit of an attorney's advice on this crucial decision.[33]

¶91 We agree with the court of appeals that the defendant has shown that trial counsel performed deficiently when she failed to ascertain that the persistent repeater enhancer was, as a matter of law, inapplicable to the defendant and when she advised the defendant to enter the plea agreement based in large part on the State's offer to drop that enhancer.

¶92 Our decisions in State v. Carter, 2010 WI 40, 324 Wis. 2d 640, 782 N.W.2d 695, and State v. Domke, 2011 WI 95, 337 Wis. 2d 268, 805 N.W.2d 364, are instructive regarding the extent to which counsel is required to know or investigate the relevant law.  These cases teach that to meet the constitutional standard for effective assistance, "[c]ounsel must either reasonably investigate the law and facts or make a reasonable

---

[33] United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (quoting Boria v. Keane, 99 F.3d 492, 496-97 (2d Cir. 1996) (quoting Anthony G. Amsterdam, Trial Manual 5 for the Defense of Criminal Cases § 201, at 339)).  See also Patterson v. LeMaster, 21 P.3d 1032, 1036 (N.M. 2001) (citing Gordon).

See also ABA Standards for Criminal Justice § 14-3.2 (3d ed. 1999)("To aid the defendant in reaching a decision defense counsel, after appropriate investigation, should advise the defendant of the alternatives available . . . . Defense counsel should not recommend acceptance of a plea unless appropriate investigation and study of the case has been completed.").

strategic decision that makes any further investigation unnecessary."[34]

¶93 Trial counsel in the present case offered no reason——strategic or otherwise——for failing to know or investigate the persistent repeater enhancer statute or for failing to challenge the persistent repeater enhancer attached to the armed robbery charge. The persistent repeater enhancer statute is not obscure or unsettled law as applied to the facts of the present case. Thus, trial counsel performed deficiently because she did not know or reasonably investigate a clear statute erroneously applied to the defendant and because she offered no explanation for her failure to know or investigate the statute. Furthermore, defense counsel's advice to the defendant about his plea was based on the erroneously applied statute.

¶94 We turn to the prejudice prong of the Strickland test for ineffective assistance of counsel.

¶95 To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[35]

---

[34] State v. Domke, 2011 WI 95, ¶41, 337 Wis. 2d 268, 805 N.W.2d 364 (citing Carter, 324 Wis. 2d 640, ¶23 (quoting Strickland, 466 U.S. at 691: "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.")).

[35] Strickland, 466 U.S. at 694.

¶96 Thus, the defendant in the present case must demonstrate that there is a reasonable probability he would not have pled no contest and that he would have gone to trial had he known the persistent repeater enhancer was a legal impossibility.[36]

¶97 The State argues that the defendant did not prove that trial counsel's deficient performance was prejudicial. The State characterizes the circuit court's declaration that the defendant would have pled no contest even absent the error of including the penalty enhancer as a finding of fact and a finding about the defendant's credibility.

¶98 The circuit court never explicitly or implicitly made a finding that the defendant's testimony was incredible. Rather, the circuit court concluded, as a matter of law, that under the totality of circumstances the defendant failed to show that there was a reasonable probability he would have gone to trial absent counsel's error.

¶99 This court determines independently, as a matter of law, whether the facts demonstrate prejudice, that is, whether under the totality of the circumstances there is a reasonable probability the defendant would not have pled no contest and would have gone to trial had he known the persistent repeater

---

[36] Hill v. Lockhart, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."); Bentley, 201 Wis. 2d at 312.

enhancer was a legal impossibility. "[I]t is by no means obvious how a court is to determine the probability that a defendant would have gone to trial. It is clear enough that a defendant must make more than a bare allegation that he 'would have pleaded differently and gone to trial' . . . ."[37] The defendant in the present case made more than a bare allegation that he would have pleaded differently and gone to trial.

¶100 The defendant does not rely on a conclusory assertion of prejudice. Rather, he presented a persuasive factual account of the special circumstances that support his contention that he would have gone to trial absent the misinformation he received about the persistent repeater enhancer.[38] The defendant detailed why his plea of no contest was a direct consequence of the misinformation he received about the penalty he faced. The defendant's testimony is supported by trial counsel's testimony and the record. The record allows the court to meaningfully address the defendant's claim of prejudice.

¶101 The defendant explained that he perceived the State's case as having a weak spot (which the State acknowledged at sentencing and in this court) and that he would have gone to

---

[37] United States v. Horne, 987 F.2d 833, 835-36 (D.C. Cir. 1993), cert. denied, 510 U.S. 852 (1993).

[38] Hill, 474 U.S. at 50 (the defendant should allege that had counsel correctly informed him about the penalty, he would have insisted on going to trial and should further allege special circumstances that might support the conclusion that he placed particular emphasis on the misinformation in deciding whether to plead no contest).

trial absent his overwhelming desire to avoid a mandatory sentence of life in prison. The disparity in penalty between the sentence for armed robbery with the persistent repeater enhancer (mandatory life in prison) and the sentence for armed robbery without such an enhancer (a circuit court discretionary determination of prison for a term of years) was significant to the defendant. He did not want to forever foreclose the opportunity to be released from prison. Under these circumstances the State's dropping the (legally impermissible) persistent repeater enhancer was a substantial inducement to the defendant to accept the plea agreement.

¶102 Trial counsel's testimony and written communications with the defendant were consistent with the defendant's account of the defendant's state of mind and the events leading up to the plea agreement.

¶103 The record support a determination of prejudice under Strickland. Strickland "does not require certainty or even a preponderance of the evidence that the outcome would have been different with effective assistance of counsel"; it requires only "reasonable probability."[39]

---

[39] Magana v. Hofbauer, 263 F.3d 542, 547 (6th Cir. 2001).

See William v. Taylor, 529 U.S. 362, 405-06 (2000), in which the Court explained Strickland as follows:

Take, for example, our decision in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established

(continued)

¶104 Under the totality of the circumstances set forth in the record (and we have detailed the testimony at ¶¶41-51), we conclude that the defendant has satisfied the prejudice prong of the Strickland standard. He has established that there was a reasonable probability that he would not have pled no-contest and would instead have gone to trial had he known he did not face a mandatory sentence of life in prison without the possibility of extended supervision.

¶105 The recent federal district court decision in Pidgeon v. Smith, No. 13-cv-57-bbc, 2014 WL 4294965 (W.D. Wis. 2014), is instructive on the question of prejudice. The issue in Pidgeon, a federal habeas corpus proceeding, was whether Pidgeon was denied effective assistance of counsel and was entitled to a trial.

¶106 In Pidgeon, the prosecutor proposed a plea agreement promising the defendant that he would not be prosecuted for a sexual offense in a separate case and that the prosecutor would recommend a sentence of 10 years in prison followed by 10 years of supervision. Pidgeon agreed to plead no contest after being misinformed by his trial counsel of the possibility that, should

---

by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be "diametrically different," "opposite in character or nature," and "mutually opposed" to our clearly established precedent because we held in Strickland that the prisoner need only demonstrate a "reasonable probability that . . . the result of the proceeding would have been different.

he decline the plea offer, he might be subject to Wisconsin's persistent repeater enhancer statute mandating life in prison without extended supervision.

¶107 After sentencing, Pidgeon learned (as a result of his own research) that his prior conviction and the offense in the separate case did not render him subject to the statutory persistent repeater enhancer. He sought to withdraw his no-contest plea. A hearing was held, and Pidgeon and his trial counsel were the only witnesses. Pidgeon testified that he entered the plea agreement because he believed he was facing a mandatory sentence of life in prison.

¶108 The federal district court concluded that Pidgeon's trial counsel's failure to investigate the prior conviction and the applicable law was objectively unreasonable: "[A] reasonably capable lawyer . . . would not tell a client that he faced a mandatory life sentence without undertaking an investigation to determine that the advice was accurate."[40]

¶109 The federal district court further concluded that Pidgeon's trial counsel's deficient performance was prejudicial, noting that "[t]he only evidence on point is petitioner's unrebutted testimony: he would have taken his chances at trial" had trial counsel not misinformed him that "he ran a strong risk of getting a life sentence . . . ."[41] The federal court stated

---

[40] Pidgeon v. Smith, No. 13-cv-57-bbc, 2014 WL 4294965, at *5 (W.D. Wis. 2014).

[41] Id.

34

that trial counsel "neither adduced any evidence that would tend to call petitioner's testimony into question nor suggested that even if counsel misrepresented the potential sentence petitioner could receive, it was not significantly different from what he could actually have received."[42] Thus, Pidgeon showed a reasonable probability that he would not have pled guilty absent trial counsel's error.

¶110 In sum, with regard to the first issue, we conclude that the defendant's no-contest plea was not knowing, intelligent, and voluntary and that the matter should be remanded to the circuit court to allow the defendant to withdraw his no-contest plea.

¶111 We also conclude that the defendant received ineffective assistance of trial counsel and that the matter should be remanded to the circuit court to allow the defendant to withdraw his no-contest plea.

¶112 Accordingly, the court of appeals' decision remanding the matter to the circuit court to allow the defendant to withdraw his no-contest plea is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[42] Id.

¶113 PATIENCE DRAKE ROGGENSACK, J. *(dissenting).* Myron C. Dillard was convicted of armed robbery based on his plea of no contest. He received the maximum permissible sentence for armed robbery. He moved to withdraw his plea, asserting that manifest injustice will result if his plea is not vacated. Dillard asserts his plea was not entered knowingly and intelligently because his counsel did not tell him that the State could not prosecute him as a persistent repeater for armed robbery. He claims ineffective assistance of counsel based on the same assertion.

¶114 In order to withdraw his plea subsequent to sentencing, Dillard bears the burden to prove manifest injustice by clear and convincing evidence. State v. Bentley, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). Dillard failed to shoulder that burden because he submitted insufficient factual-objective information at the plea withdrawal hearing. Furthermore, the circuit court found that Dillard's testimony was not credible. Accordingly, I would reverse the court of appeals; affirm the circuit court; and I respectfully dissent from the majority opinion.

## I. BACKGOUND

¶115 The State's charges against Dillard arose from Dillard's victimization of a young woman, T.L., on December 4, 2009. T.L. was seated in her car in a parking lot when Dillard opened the front passenger-side door and entered her car. He forcefully placed a gun against her right shoulder and told her to drive. T.L. complied, fearing Dillard would shoot her if she

did not. Dillard asked for money, and T.L. gave him all she had. He ordered her to drive to various locations, then to stop, and he exited the car. As he was leaving, he told her not to call the police or he would come after her and her family and that he knew where to find her.

¶116 Dillard was convicted of armed robbery, contrary to Wis. Stat. § 943.32(2) (2011-12).[1] His conviction was based on a plea agreement wherein the State dismissed a count of false imprisonment, charged as a repeater; dismissed a persistent repeater charge, in regard to the armed robbery; and the district attorney recommended eight years of incarceration consecutive to the time that Dillard was serving. Dillard was then serving a sentence of four years, seven months and nine days based on revocation of his parole for two past armed robberies and two sexual assaults, and revocation of his extended supervision for convictions of theft and identity theft.

¶117 At the plea hearing, the court explained to Dillard that a conviction of armed robbery had a maximum imprisonment of 40 years, with 25 years incarceration and 15 years extended supervision. The court asked Dillard if he understood that the court was not bound by any plea agreements and that the court could sentence him to the maximum for the crime of conviction. Dillard said that he understood. The court thoroughly reviewed the constitutional rights that Dillard was giving up through his

---

[1] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

plea and informed him of the consequences of his plea if he were not a United States citizen and asked Dillard if he understood. Dillard said, "Yes, Your Honor." The court asked whether Dillard was satisfied with the representation that his attorney had provided to him, and Dillard said that he was. The court also asked Dillard whether he wanted to ask the court any questions, and Dillard said, "No, sir, none." The circuit court then concluded:

> The court will find that the defendant understands these proceedings and is entering his plea to Count 1 without the repeater freely, voluntarily, and intelligently, and I find that there's a factual basis for the plea and, therefore, accept the same and will adjudicate him guilty. Count 2 will be dismissed.

¶118 At the time the plea was accepted, the assistant district attorney, trial counsel and the judge all mistakenly believed that the armed robbery charge was subject to a persistent repeater charge.[2] If that belief had been correct, Dillard would have been subject to a mandatory sentence of life in prison pursuant to Wis. Stat. § 939.62(2m)(c).

¶119 In addressing the victim, her family and the court at sentencing, Dillard admitted he committed armed robbery, saying, "Good morning, everybody. Well, I'm the person who robbed Miss [T.L.] in December. . . . Not only did I rob Miss [L.] of money, I frightened her half to death as well. . . . So I'm

---

[2] Dillard was not subject to a persistent repeater charge because both of his prior armed robbery convictions occurred on the same day. Wis. Stat. § 939.62(2m)(b)1.; State v. Long, 2009 WI 36, ¶¶35-36, 317 Wis. 2d 92, 765 N.W.2d 557.

3

sorry, Miss [L.] for what I've done in harming you." The defendant was then 50 years of age.

¶120 T.L.'s father spoke at sentencing, and in a prior letter to the court, T.L.'s father said:

> Among other consequences of the assault, [T.] has been unable to sleep, has had nightmares in which she relived the assault and has had to relive the experience over and over each time she has come to court either testifying or expecting to testify. She has been unable to concentrate, and has experienced fear, anxiety, and apprehension. In addition, she has suffered financially——she is unable to go to work at times, has been unable to get back into the car in which the robbery took place, has been in counseling and has required medication to deal with the consequences.

¶121 Testimony given at sentencing explained that during the robbery Dillard had "made threats that he would come back to her family after this occurred if she told the police and he knew where to find her."

¶122 In deciding what sentence it would impose, the court knew of the ongoing problems of the victim who suffered from post-traumatic stress disorder because of Dillard's crimes and who had had an acute reaction to the stress of testifying that required hospitalization after the final hearing.

¶123 The court was very concerned about the repetitive nature of Dillard's conduct as this was the third robbery of a young woman under very similar circumstances, the other two involving sexual assaults as well as robbery. The court said:

> What goes towards character is the fact that you had two other very similar incidents in 1989 with robberies and sexual assaults. You sat——served a prison sentence on those, you were paroled and were revoked. You were on supervision at the time of this

4

incident. You had Sexual Offender Treatment, and you had all of the treatment in the prison system, and you still got out and you still did this, and you did it again. That goes towards character. That also goes towards the need to protect the public.

In this case, when you have treatment, you go through everything, your rehabilitative needs are addressed in prison, and you get out and you still do the same thing. . . . What I'm going to do on this case is a 40-year prison sentence, 25 years[] initial confinement, 15 years[] extended supervision. I just think he needs a long supervision if he gets out. I figure if he's 75, at least maybe he's not going to be doing this anymore when he gets out. I'm going to run it concurrent to his other sentences, so I don't know where——where he's at with credit. The reason I'm doing it concurrent is because the reason he's sitting now is because of these facts. That's the reason he got revoked.

¶124 Dillard, by counsel, moved to withdraw his plea. He contended that the benefit of dismissing the persistent repeater charge was "illusory," and caused his plea to be unknowing and unintelligent. He also claimed his trial counsel was ineffective in failing to alert him to the legal conclusion that he was not subject to a persistent repeater charge. He contended that refusing to permit him to withdraw his plea to armed robbery would result in manifest injustice.

¶125 The circuit court held a Machner[3] hearing, wherein it considered the testimony of Dillard and of trial counsel, as well as the submissions of Dillard and the State. Dillard testified that he was concerned about the potential for life in prison without the possibility of parole or extended

---

[3] State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

5

supervision. He said that he discussed this with his attorney, as well as the district attorney's offer to recommend eight years confinement and his attorney's recommending five years confinement and 15 years extended supervision. He said that they also discussed the district attorney's agreement to dismiss the charge of false imprisonment and its repeater charge. Dillard asserted that he would not have pled, but would have gone to trial, if he had known that the State could not prosecute him on the persistent repeater charge.

¶126 The court questioned Dillard further to assess his credibility regarding his assertion that he would not have pled, but would have gone to trial if he had known that he could not be prosecuted on the persistent repeater charge. The court did so by asking whether his motion to withdraw his plea was grounded in the sentence imposed. Dillard was asked:

Q.  If I would have gave you the five years' initial confinement, would you have been satisfied with that sentence?

A.  Of course.

Q.  If I would have went along with what the State said, the eight years' initial confinement, would you have been satisfied with that?

A.  Of course. That's better than a life without parole.

Q.  Your dissatisfaction with my sentence was the fact that I gave you the——the maximum, correct?

A.  Um——I guess. Yes, I guess so.

¶127 Subsequent to the above colloquy with the court, in response to questions from postconviction counsel, Dillard said

6

that he understood that the judge could sentence him to 40 years imprisonment for the armed robbery charge when he made his plea.

¶128 Trial counsel was next to testify. She explained the preparation for trial and her representation of Dillard in the revocation proceeding where she had seen [T.L] testify as a very credible witness. She spoke of the State's offer and said:

> I also advised him that, even if he felt there were some problems with the State's case——and he and I had acknowledged there may be——that he had to take into consideration that if he went to trial the jury would likely hear things that would be very devastating towards his case, like the fact that the victim had identified him on a sex offender database. I also reminded him that the victim had testified at a revocation hearing and that she testified in the proceedings rather credibly and that an administrative law judge had made a similar comment, and in light of all those circumstances, as well as his ability to argue for a lesser sentence, I thought he should give serious consideration to accepting the State's offer.

Testimony at the plea withdrawal hearing showed that before Dillard pled, his trial attorney explained weaknesses in his case to him. Trial counsel said that T.L. identified Dillard as the perpetrator of the armed robbery at the revocation hearing and that she had testified very credibly. Therefore, earlier concerns about the strength of her identification were not significant. Dillard's attorney also told him that at trial the jury would hear that T.L. had identified him from his picture on the sex offender registry, and that would be "devastating" to his case.

¶129 When trial counsel was asked whether Dillard ever indicated to her why he agreed to the State's offer, she said:

7

> I believe it was the totality of the circumstances, the dismissal of Count 2, the dismissal of any repeater enhancer at all on Count 1, even just a simple repeater for having been convicted of prior felonies, the fact that the State had a motion filed that would introduce to the jury other acts that had very similar type of conduct that I believe would come in, which I told Mr. Dillard about, the fact again that we had seen the victim testify at a prelim[inary] and at a revocation hearing and she did not waiver in her identification of the defendant in the testimony. All of those things[.]

Counsel explained that she told Dillard that other acts evidence would be admitted at trial because of the similar types of victimization that led to his two prior armed robbery convictions. She again explained that they had seen T.L. testify at two prior hearings and that T.L. was firm and convincing in her identification of Dillard as the perpetrator of the armed robbery.

¶130 When trial counsel was asked if she had known before his plea that Dillard was not subject to a persistent repeater charge in regard to armed robbery would she nevertheless have recommended that he accept the plea bargain, she said that she would have. She explained that he was facing 40 years on Count 1 and ten years on Count 2 and there were "overwhelming negative facts" that she believed would come in at the trial. When the court asked, "Did Mr. Dillard ever say to you, 'I will take any deal whatsoever if you can get the persistent repeater dismissed?'" Trial counsel said, "No."

¶131 Based on the information provided, including Dillard's testimony, the circuit court denied Dillard's motion, finding that he got the benefit of his plea bargain and concluding that Dillard suffered no prejudice. The court of appeals reversed.

Relying on cases where a circuit court had erred[4] in regard to the charge to which the defendant pled, the court of appeals extended the holdings of those cases to a charge that was dismissed. The court of appeals concluded that State v. Cross, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64, controlled because the charging error "marred the plea negotiations" and was more substantial than the mistake in Cross. State v. Dillard, 2013 WI App 108, ¶¶18-19, 350 Wis. 2d 331, 838 N.W.2d 112. The court of appeals also concluded that Dillard was provided ineffective assistance of counsel based on the same charging error. Id., ¶20.

## II. DISCUSSION

### A. Standard of Review

¶132 Dillard claims that manifest injustice will result if his plea is not vacated because it was not entered knowingly and intelligently and because trial counsel was ineffective in not telling him that the State erroneously charged him as a persistent repeater with regard to armed robbery. Whether a plea has been entered knowingly and intelligently presents a question of constitutional fact that we review independently.

---

[4] The court of appeals relied on State v. Cross, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64 (wherein the circuit court gave Cross mistaken information about the crime to which he pled); State v. Woods, 173 Wis. 2d 129, 496 N.W.2d 144 (Ct. App. 1992) (wherein the court erred by imposing a sentence to run consecutive to a juvenile disposition that Woods was then serving); State v. Brown, 2004 WI App 179, 276 Wis. 2d 559, 687 N.W.2d 543 (wherein the court erred by stating that Brown's plea did not trigger sex offender registration or Wis. Stat. ch. 980 commitment potential).

Cross, 326 Wis. 2d 492, ¶14. Whether counsel was ineffective presents a mixed question of fact and law. State v. Johnson, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). We will not reverse a circuit court's factual findings unless they are clearly erroneous. Id. However, we independently review whether counsel's performance was deficient and prejudicial. Id. at 128.

### B. Plea Withdrawal

¶133 Dillard claims that if he had known that the State could not prosecute him as a persistent repeater in regard to the armed robbery, he would not have pled, but would have gone to trial on the charges of armed robbery and false imprisonment as a repeater.[5]

### 1. General principles

¶134 There is the potential that a plea may not have been entered knowingly, intelligently and voluntarily if the colloquy conducted by the circuit court was constitutionally insufficient. State v. Bangert, 131 Wis. 2d 246, 255, 389 N.W.2d 12 (1986). A plea may be involuntary either because the defendant does not understand the charge to which he pleads or because he does not understand the constitutional rights accorded to him that he is waiving by pleading. Id. at 265-66.

¶135 Furthermore, a plea may be withdrawn if the circuit court does not comply with Wis. Stat. § 971.08. Id. at 274.

---

[5] Dillard argues for plea withdrawal because resentencing would have put him in the same position he was with his plea, facing a 40-year maximum imprisonment for armed robbery.

10

"The initial burden rests with the defendant to make a prima facie showing that his plea was accepted without the trial court's conformance with sec. 971.08." Id. If the defendant makes such a showing and alleges that he did not know or understand the information that § 971.08 requires be provided to him at the plea hearing, "the burden will then shift to the state to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered, despite the inadequacy of the record at the time of the plea's acceptance." Id.

¶136 The specific obligations that Wis. Stat. § 971.08 places on the circuit court when a plea is forthcoming relevant to our inquiry herein are as follows:

> (1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:
>
> (a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.
>
> (b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

¶137 Plea withdrawal based on a constitutionally inadequate colloquy or based on a statutorily insufficient colloquy requires error by the circuit court. Id. at 274-76. Circuit court error in informing the defendant is required in order for the burden to shift to the State once the defendant makes a prima facie showing of error and alleges that he did not know or understand the information the circuit court was required to provide.

11

¶138 However, there are times when plea withdrawal after sentencing is permitted and the error does not lie with the circuit court, but rather is found elsewhere. In such cases, a defendant is entitled to withdraw a guilty or no contest plea upon his proving by clear and convincing evidence that a manifest injustice will result unless the plea is vacated. Bentley, 201 Wis. 2d at 311. Ineffective assistance of counsel is such an error. Id.

¶139 In order to be entitled to withdraw a plea after sentencing based on ineffective assistance of counsel, the defendant bears the burden to prove by clear and convincing evidence "that counsel's performance was both deficient and prejudicial." Id. at 312 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). In order to satisfy the prejudice prong of the Strickland test, a defendant seeking to withdraw his or her plea must prove that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. See id. at 312. In order to meet his proof obligation, "[a] defendant must do more than merely allege that he would have pled differently; such an allegation must be supported by objective factual assertions." See id. at 313 (citing State v. Saunders, 196 Wis. 2d 45, 51, 538 N.W.2d 546 (Ct. App. 1995) (explaining that a defendant must provide evidence that is "factual-objective" rather than information that is "opinion-subjective," and a defendant's saying that he would have gone to trial if counsel had properly advised him is an opinion, not a fact)).

12

¶140 Bentley contended that he would not have pled if "counsel correctly informed him about his minimum parole eligibility date." Id. at 316. In evaluating Bentley's assertion, we explained that Bentley's allegation, without more, was not sufficient to grant his motion to withdraw his plea. Id.

¶141 We cited Santos v. Kolb, 880 F.2d 941 (7th Cir. 1989), abrogated on other grounds by Padilla v. Kentucky, 599 U.S. 356 (2010), with approval. Bentley, 201 Wis. 2d at 314. Santos held that a "specific explanation of why the defendant alleges he would have gone to trial is required." Id. (quoting Santos, 493 U.S. at 943). The First Circuit, the Tenth Circuit and the D.C. Circuit are in accord with the Seventh Circuit in this regard. United States v. LaBonte, 70 F.3d 1396, 1413 (1st Cir. 1995), rev'd on other grounds, 520 U.S. 751 (1997) (concluding that a defendant's self-serving statement that if his counsel had given him complete advice, he would not have pled guilty is not sufficient to prove prejudice); United States v. Gordon, 4 F.3d 1567, 1571 (10th Cir. 1993) (mere allegation that but for counsel's inaccurate information regarding sentencing, he would have gone to trial held to be insufficient to establish prejudice); United States v. Horne, 987 F.2d 833, 836 (D.C. Cir. 1993), cert. denied, 510 U.S. 852 (1993) (explaining that a bare allegation that he would have gone to trial is insufficient to withdraw plea).

¶142 In addition, federal courts look to whether a defendant has made a viable claim of innocence of the crime of

13

conviction. <u>United States v. West</u>, 392 F.3d 450, 456 (D.C. Cir. 2004). This amounts to affirmatively advancing an objectively reasonable argument that the defendant is innocent of the crime to which he pled. <u>United States v. Cray</u>, 47 F.3d 1203, 1209 (D.C. Cir. 1995).[6]

### 2. Dillard's plea withdrawal motion

¶143 Dillard does not identify a circuit court error that would result in a <u>Bangert</u>-type analysis. That is, he does not contend that the circuit court's colloquy was either constitutionally insufficient or failed to satisfy the requirements established in Wis. Stat. § 971.08.[7] Rather, he objects to a charging error that the district attorney made and that his attorney did not recognize and explain to him before he pled no contest. Accordingly, <u>Bentley</u>, not <u>Bangert</u>, provides the analytic framework by which we evaluate Dillard's motion for plea withdrawal. In a <u>Bentley</u> proceeding, the defendant has the burden of proof throughout the proceedings; it never shifts to the State, as it may in a <u>Bangert</u> proceeding. <u>State v. Burton</u>, 2013 WI 61, ¶7, 349 Wis. 2d 1, 832 N.W.2d 611.

¶144 <u>State v. Denk</u>, 2008 WI 130, 315 Wis. 2d 5, 758 N.W.2d 775, is important when analyzing a claim that a defendant's plea

---

[6] Dillard could not meet this federal requirement because he admitted he committed the armed robbery of which he was convicted.

[7] The majority opinion erroneously states, "the [circuit] court . . . advised the defendant that he was facing a mandatory sentence of life in prison without the possibility of extended supervision." Majority op., ¶34. The circuit court never advised the defendant what would occur if he did not plead.

14

was not knowing, intelligent and voluntary because there was a charging error of which defendant was unaware. Denk was charged with felony possession of methamphetamine; felony possession of THC with intent to deliver; misdemeanor possession of marijuana; misdemeanor possession of drug paraphernalia; and felony intent to convert methamphetamine, contrary to Wis. Stat. § 961.575(3). Id., ¶¶17, 19. Denk focuses on the last felony charge.

¶145 In that case, the district attorney and Denk entered into a plea agreement wherein Denk agreed to plead to felony possession of methamphetamine. In exchange, the district attorney agreed to dismiss all other charges, including felony intent to convert methamphetamine, and to recommend that Denk serve six months in the county jail as a condition of probation. Id., ¶21. The district attorney and Denk did as they agreed. After determining that Denk was satisfied with his attorney's services and that Denk's plea was knowing and voluntary, the court accepted Denk's no contest plea and placed Denk on probation, with five months in the county jail as a condition of probation. Id., ¶22.

¶146 Several months later, Denk moved to withdraw his plea, asserting that there was no factual basis for charging him with felony possession of methamphetamine paraphernalia under Wis. Stat. § 961.573(3). Id., ¶23. He contended that because he could not have been convicted of the charge, the district attorney's offer to drop the charge was "an illusory benefit" that rendered his plea unknowing and involuntary. Id.

15

¶147 We affirmed the denial of Denk's motion to withdraw his plea. Id., ¶78. We explained that State v. Brown, 2004 WI App 179, 276 Wis. 2d 559, 687 N.W.2d 543 and State v. Riekkoff, 112 Wis. 2d 119, 332 N.W.2d 744 (1983), the cases on which Denk relied, involved problems with the charge to which the defendant actually pled, while Denk's allegations involved a charge to which he did not plead. Denk, 315 Wis. 2d 5, ¶75. We also explained that "[u]nlike the cases upon which Denk relies, this was not a plea based on an illusory promise, but rather it was a plea where the promise was realized." Id., ¶78. Stated otherwise, Denk received the benefits of his bargain with the district attorney because the district attorney honored the plea bargain. Id.

¶148 Mistakes in charging may be caused by insufficient facts known at the time the complaint or information is filed or the need to do further legal research. They probably occur with some frequency, as the records presented to us often show charges that have been dismissed on cases that have gone to trial. Denk establishes that a mistakenly charged crime that is dismissed does not form part of the conviction and is not subject to the same scrutiny as the crime of conviction. For example, although the circuit court must establish the factual basis for the crimes to which a defendant pleads, the court has no such obligation in regard to crimes charged but later dismissed.

¶149 Surely the majority opinion can't be suggesting that the circuit court is obligated to inform a defendant about facts

16

that the State would have had to prove for dismissed charges, as well as facts the State would be required to prove for charges to which a defendant pleads. This would be an extraordinary burden to place on circuit courts. However, Dillard, who is dissatisfied with the results of his plea bargain, is attempting to make the circuit court somehow responsible for the bargain he made, but now seeks to avoid.

¶150 Cross also is helpful when considering mistaken information, although it is not as "on point" as is Denk because Cross involved a claimed circuit court error in giving Cross mistaken information about the crime to which he pled. Therefore, Cross applied a Bangert analysis, not the Bentley analysis that is applicable here. Cross, 326 Wis. 2d 492, ¶4.

¶151 Subject to a plea bargain, Cross pled guilty to second-degree sexual assault, which has a maximum imprisonment of 30 years, with 20 years incarceration and 10 years extended supervision. However, at the plea hearing, "counsel for Cross informed the circuit court that second degree sexual assault was a Class C felony and that the maximum total sentence was 40 years," with the potential of 25 years incarceration and 15 years extended supervision. Id., ¶8. The district attorney recommended only 24 months of initial confinement. Id., ¶7. At the plea hearing, the circuit court repeated the potential for the same maximum punishments defense counsel had incorrectly set out. Id., ¶8.

¶152 At sentencing, the court reviewed numerous victim impact statements that explained that Cross had molested or

17

sexually assaulted many family members. Id., ¶9. The victim in the case then before the court was Cross' ten-year-old great-granddaughter. Id., ¶6. After explaining that the court did not want to give Cross another opportunity to molest other family members, the court sentenced Cross to the maximum that it believed was available, i.e., 25 years incarceration and 15 years of extended supervision. Id., ¶10.

¶153 Cross moved for postconviction relief, requesting plea withdrawal and resentencing. Id., ¶11. Cross argued that because he was incorrectly advised of the penalties prior to his plea, his plea was not knowing and intelligent. Id. The circuit court denied Cross' motion to withdraw his plea, but did vacate the sentence and ordered resentencing. Id., ¶12. Cross was again sentenced to the maximum for the crime of conviction, 20 years confinement and ten years extended supervision. Id.

¶154 We affirmed the denial of Cross' motion to withdraw his plea after concluding that the circuit court's statements on the range of punishments to which Cross was subjected by pleading was not "substantially higher[] than that authorized by law." Id., ¶30. We concluded that Cross had not made a prima facie case entitling him to shift the burden to the State to prove that his plea was knowing and intelligent. Id.

¶155 Dillard artfully attempts to place the burden on the State to show that his plea was knowing and intelligent. However, under a Bentley analysis, which is the analysis that is applicable here, the burden of proof never shifts to the State. Burton, 349 Wis. 2d 1, ¶7. Therefore, it is Dillard who must

18

prove by clear and convincing evidence that manifest injustice will result unless his plea is vacated because he did not plead knowingly and intelligently. Bentley, 201 Wis. 2d at 311. Requiring the defendant to shoulder the burden of proof on whether his plea was knowing and intelligent is consistent with Bentley's and Strickland's directive that with regard to an ineffective assistance of counsel claim, the defendant bears the burden to prove both deficient performance and prejudice. Id. at 312; Strickland, 466 U.S. at 687.

¶156 I conclude that our opinion in Denk controls Dillard's plea withdrawal motion because Denk is grounded in a charging error where there is no subsequent circuit court error. As in Denk, the circuit court here fully complied with its constitutional and statutory obligations during its plea colloquy with Dillard. That conclusion is affirmed by Dillard, who before us has never contended that the circuit court did not fully inform him of the potential punishments for armed robbery, the crime to which he pled; the constitutional rights he was relinquishing by his plea; or pointed to any error of any type in the plea colloquy.

¶157 After its thorough colloquy, the circuit court concluded that Dillard pled to armed robbery "freely, voluntarily, and intelligently." In order to overturn this conclusion, Dillard must prove by clear and convincing evidence that he did not "freely, voluntarily, and intelligently" plead. To do so he must provide factual-objective, not opinion-subjective, information that will prove by clear and convincing

19

evidence that he did not knowingly and intelligently plead to armed robbery. Saunders, 196 Wis. 2d at 51.

¶158 At the hearing on Dillard's motion to withdraw his plea, Dillard said that he would have gone to trial on the charges of armed robbery and false imprisonment as a repeater if he had known that the State could not prosecute him as a persistent repeater on the armed robbery charge.[8] That is an "opinion-subjective" statement, not a "factual-objective" statement.[9] Bentley, 201 Wis. 2d at 313 (concluding that a "defendant must do more than merely allege that he would have pled differently; such an allegation must be supported by objective factual assertions."); accord Sanders, 196 Wis. 2d at 51.

¶159 Dillard also said that he believed that the State had some problems with his identification and that bore on why he would have gone to trial. This is factual-objective information. However, his trial attorney testified that she advised him that their earlier concerns about the victim's identification of him were no longer strong after seeing the victim testify at two hearings. She said:

---

[8] Dillard said this same thing in a number of different ways, but each amounts to the same opinion-subjective narration about what he would have done if he had known the State could not prosecute him as a persistent repeater.

[9] The majority opinion repeatedly uses Dillard's assertion as though repeating it will change it from an insufficient opinion-subjective statement into requisite factual-objective proof, e.g., majority op., ¶¶44-47.

20

[H]e had to take into consideration that if he went to trial the jury would likely hear things that would be very devastating towards his case, like the fact that the victim had identified him on a sex offender database. I also reminded him that the victim had testified at a revocation hearing and that she testified in the proceedings rather credibly and that an administrative law judge had made a similar comment.

¶160 Therefore, before he pled, counsel explained to Dillard that T.L. had testified very credibly when she identified him as the perpetrator of the armed robbery at the revocation hearing. Accordingly, earlier concerns about the strength of her identification of him were not significant. Counsel also told Dillard that at trial the jury would hear that T.L. had identified him from his picture on the sex offender registry, a "devastating" fact to place before the jury.

¶161 Trial counsel was asked whether Dillard indicated to her why he agreed to the district attorney's offer, she said:

I believe it was the totality of the circumstances, the dismissal of Count 2, the dismissal of any repeater enhancer at all on Count 1, even just a simple repeater for having been convicted of prior felonies, the fact that the State had a motion filed that would introduce to the jury other acts that had very similar type of conduct that I believe would come in, which I told Mr. Dillard about, the fact again that we had seen the victim testify at a prelim[inary] and at a revocation hearing and she did not waiver in her identification of the defendant in the testimony. All of those things[.]

Before he pled, Dillard knew that other acts evidence would be admitted at trial because of the similar types of victimization that led to his two prior armed robbery convictions. Dillard's trial attorney again explained that they had seen T.L. testify at two prior hearings and that T.L. was firm and convincing in

21

her identification of Dillard as the perpetrator of the armed robbery.

¶162 The only factual-objective information Dillard provided in support of his motion to withdraw his plea was a concern about the strength of the victim's identification. At the hearing on Dillard's motion to withdraw his plea, trial counsel said that prior to his plea, she told Dillard that earlier concerns about the victim's identification of him were not significant after seeing T.L. testify at the preliminary hearing and the revocation hearing. There, T.L. was a credible witness who "did not waiver in her identification of [him]."

¶163 Trial counsel's testimony was sufficient to offset any benefit Dillard could receive from his sole, factual-objective statement that focused on the strength of T.L.'s identification of him as the perpetrator. The circuit court concluded that he did not meet his burden of proof by clear and convincing evidence. I agree with the circuit court and conclude that Dillard did not provide sufficient factual-objective information to meet his burden to prove by clear and convincing evidence that his plea to armed robbery was not knowing, intelligent and voluntary.

¶164 In addition, at the hearing on plea withdrawal, the circuit court assessed the credibility of Dillard's statement that if he had known that the State could not prosecute him as a persistent repeater, he would have gone to trial on the charges

of armed robbery and false imprisonment as a repeater.[10]  In making its assessment, the court asked:

> Q.  If I would have gave you the five years' initial confinement, would you have been satisfied with that sentence?
>
> A.  Of course.
>
> Q.  If I would have went along with what the State said, the eight years' initial confinement, would you have been satisfied with that?
>
> A.  Of course.  That's better than a life without parole.
>
> Q.  Your dissatisfaction with my sentence was the fact that I gave you the——the maximum, correct?
>
> A.  Um——I guess.  Yes, I guess so.

¶165 Although not explicitly stated, the circuit court found that Dillard's assertion that he would have gone to trial but for the charging error was not credible.  As the court explained:

> [T]he only reason we're here on appeal is because I did not go along with [counsel or the district attorney's] recommendations and I gave him the maximum sentence which he knew he could have received from me. This is all a matter, in my opinion, from listening to him, now that he's got the sentence he doesn't like it and now he wants to appeal it and find a way to do so.

---

[10] The majority opinion attempts to characterize the circuit court's questioning of Dillard as irrelevant to the validity of Dillard's plea.  "The defendant's subsequent satisfaction or dissatisfaction with his sentence has no bearing on whether his initial decision to enter a plea was knowing, intelligent, and voluntary."  Majority op., ¶67.  The majority opinion should consider why the circuit court would have asked such questions. Clearly, the circuit court was trying to assess the credibility of Dillard's representations to the court.

Credibility determinations are for the circuit court. We will not set them aside unless they are clearly erroneous. See State v. Carter, 2010 WI 40, ¶19, 324 Wis. 2d 640, 782 N.W.2d 695. The circuit court described why it did not believe Dillard; its credibility determination is not clearly erroneous.

¶166 The circuit court also concluded that Dillard did not prove that he was denied effective assistance of counsel because the mistaken belief of counsel was not prejudicial to Dillard. The court explained:

> I believe that the other acts' evidence of the almost identical type crime taking place with a sexual assault and that evidence coming in on this case would have been devastating to any type of defense in this case, and that's, in my opinion, the reason why he reached this agreement because, as counsel indicates in her letter and here in testimony, there are a lot of negatives and she still would have recommended, even if the persistent repeater would automatically be dismissed, that she would have recommended [the plea that was offered] to him.

¶167 A defendant is prejudiced by ineffective assistance of counsel when factual-objective information submitted to the circuit court proves that "there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Bentley, 201 Wis. 2d at 312-13 (citation omitted).

¶168 I agree with the circuit court: Dillard received the benefit of his bargain and suffered no prejudice.[11] Dillard's

---

[11] The State conceded that trial counsel's performance was deficient, so I do not address whether Dillard met his burden of proof on that component of his ineffective assistance claim.

plea bargain was with the district attorney, not with the circuit court, who told Dillard that the court was not bound by any plea agreement. The district attorney fully performed, giving Dillard the benefit of his plea bargain. Furthermore, Dillard failed to prove that his plea was not knowing and intelligent because he did not provide sufficient factual-objective evidence to overcome other evidence presented at the plea withdrawal hearing. Stated otherwise, he did not prove by clear and convincing evidence that but for trial counsel's error, he would not have pled to armed robbery.

¶169 The prejudice analysis for Dillard's ineffective assistance claim is based on the same contention, i.e., that his plea was not knowing and intelligent. Therefore, the same analysis as I applied above, in which I concluded that Dillard failed to prove by clear and convincing evidence that his plea was not knowing and intelligent, controls the prejudice prong of his ineffective assistance claim. This is so because Dillard's ineffective assistance claim and his claim that his plea was not knowing and intelligent are based on the same lack of knowledge that the State could not prosecute him as a persistent repeater.

¶170 Therefore, Dillard failed to prove manifest injustice by clear and convincing evidence based on prejudice that arises from deficient performance, just as he failed to prove that his plea was not knowing and intelligent. The arguments are, in this case, two sides of the same coin. Accordingly, I would reverse the court of appeals and affirm the decision of the circuit court.

25

III. CONCLUSION

¶171 Dillard was convicted of armed robbery based on his plea of no contest. He received the maximum permissible sentence for armed robbery. He moved to withdraw his plea, asserting that manifest injustice will result if his plea is not vacated. Dillard asserts his plea was not entered knowingly and intelligently because his counsel did not tell him that the State could not prosecute him as a persistent repeater for armed robbery. He claims ineffective assistance of counsel based on the same assertion.

¶172 In order to withdraw his plea subsequent to sentencing, Dillard bears the burden to prove manifest injustice by clear and convincing evidence. Bentley, 201 Wis. 2d at 311. Dillard failed to shoulder that burden because he submitted insufficient factual-objective information at the plea withdrawal hearing. Furthermore, the circuit court found that Dillard's testimony was not credible. Accordingly, I would reverse the court of appeals; affirm the circuit court; and I respectfully dissent from the majority opinion.

¶173 I am authorized to state that Justices DAVID T. PROSSER and ANNETTE KINGSLAND ZIEGLER join in this dissent.

26