STATE of Wisconsin, Plaintiff-Respondent,

v.

Anthony L. DAWSON, Defendant-Appellant.

Court of Appeals

*No. 03–2116–CR. Submitted on briefs March 18, 2004.— Decided August 19, 2004.*

2004 WI App 173

(Also reported in 688 N.W.2d 12.)

418

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William E. Schmaal*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christopher G. Wren*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Deininger, P.J., Vergeront and Lundsten, JJ.

¶ 1. DEININGER, P.J. Anthony Dawson appeals a judgment convicting him of first-degree sexual assault of a child. He also appeals an order denying his post-conviction motion to withdraw his no contest plea.

Dawson contends that he should be allowed to withdraw his plea because the plea agreement included a provision that, upon his successful completion of five years probation, the State would move to reopen the case and amend the charge to intentional physical abuse of a child. We agree with Dawson that the reopen-and-amend provision of the plea agreement is legally unenforceable and thus renders his plea unknowing and involuntary. Accordingly, we reverse the appealed judgment and order and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2. Under a plea agreement with the State, Dawson pled no contest to first-degree sexual assault of a child. In return, the State dismissed an unrelated charge of failing to report to jail, recommended five years of probation with numerous conditions in lieu of a prison sentence, and requested a presentence investigation. The State also agreed that if Dawson successfully completed probation, the State would move to reopen the case and to amend the charge to a lesser one, intentional physical abuse of a child.[1]

---

[1] The trial court, in its ruling on Dawson's postconviction plea withdrawal motion, referred to the prospective amended charge as a "misdemeanor." Similarly, the State characterizes the agreement in its brief as being "if Dawson successfully completed a five-year period of probation, the prosecutor would move to reopen the case and amend the charge from a felony to a misdemeanor." Finally, Dawson's statement to the court at sentencing suggests that he believed the agreement would allow him to avoid a permanent felony conviction. The only reference to the prospective amended charge at the plea hearing, however, was the State's description of it as "intentional physical abuse of a child." The plea questionnaire identified the amended charge

¶ 3. The State presented the details of the plea agreement at Dawson's plea hearing. During the plea colloquy, the trial court asked Dawson if he understood the agreement as stated, and he replied that he did. The court then asked Dawson if he understood that the court was not a party to the plea negotiations, that it was not bound by the plea agreement and that it was free to impose whatever penalty it saw fit, up to the maximum prescribed by law. Dawson replied that he understood each of these things. The trial court subsequently withheld sentence and placed Dawson on probation for five years with various conditions, including a stayed term of nine months' confinement in the county jail. The court did not mention the reopen-and-amend provision when specifying the terms and conditions of Dawson's probation.

¶ 4. Dawson filed a postconviction motion seeking to withdraw his plea on the grounds that the reopen-and-amend provision in the plea agreement is not authorized by Wisconsin law. The trial court denied the motion after an evidentiary hearing. The court reasoned that, because it had informed Dawson during the plea colloquy that it was neither a party to plea negotiations nor bound by the plea agreement, Dawson had no reason to expect that his conviction would be reopened in order to reduce the charge to a lesser one. Second, the trial court concluded that it had not ap-

---

as "physical abuse of a child," as did the State at sentencing. We note that WIS. STAT. § 948.03, captioned "Physical abuse of a child," currently includes several crimes of differing classifications depending on the actor's state of mind and the degree of harm suffered by the child, but *none* are misdemeanors. Our analysis is unaffected by whether the prospective amended charge was to be a misdemeanor or simply a lesser felony. We will refer to it as a "lesser" charge.

422

proved or accepted the "invalid" portion of the plea agreement because it did not order the reopen-and-amend provision incorporated as a condition of probation at sentencing. Finally, the court questioned the "ripeness" of Dawson's motion inasmuch as his probation was still in effect and the time had thus not arrived for the State to make good on its promise to move for reopening and amendment of the charge.

¶ 5. Dawson appeals the order denying his post-conviction motion for plea withdrawal and the judgment convicting him of sexual assault. We present additional facts in the analysis which follows.

## ANALYSIS

¶ 6. A defendant who seeks to withdraw a plea after sentencing has the burden of showing by "clear and convincing evidence" that a "manifest injustice" would result if the withdrawal were not permitted. *State v. Truman*, 187 Wis. 2d 622, 625, 523 N.W.2d 177 (Ct. App. 1994). To meet this standard, a defendant must show "serious questions affecting the fundamental integrity of the plea." *Libke v. State*, 60 Wis. 2d 121, 128, 208 N.W.2d 331 (1973). A plea of guilty or no contest that is not shown by the record to have been knowingly, voluntarily and intelligently entered does not comply with constitutional requirements for a valid plea. *See State v. Bangert*, 131 Wis. 2d 246, 257, 389 N.W.2d 12 (1986) (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)).

¶ 7. Although it is often said that whether to grant a post-sentence plea withdrawal motion is committed to the sound discretion of the trial court, when a

defendant establishes a constitutional violation, the withdrawal of his or her plea becomes a matter of right and the trial court has "no discretion in the matter" to deny the motion. *Bangert*, 131 Wis. 2d at 283. Whether a plea was knowingly and voluntarily entered is a question of constitutional fact. *Id.* We affirm the trial court's findings of evidentiary or historical facts unless they are clearly erroneous, but we independently determine whether the established facts constitute a constitutional violation that entitles a defendant to withdraw his or her plea. *Id.* at 283–84; *State v. Sturgeon*, 231 Wis. 2d 487, 496, 605 N.W.2d 589 (Ct. App. 1999).

¶ 8. Dawson argues that his no contest plea is constitutionally infirm because it was induced by a legally impermissible plea bargain. According to Dawson, the reopen-and-amend provision in the plea agreement is unauthorized and unenforceable under *State v. Hayes*, 167 Wis. 2d 423, 425–28, 481 N.W.2d 699 (Ct. App. 1992). The defendant in *Hayes* negotiated a plea agreement with the State that provided, in exchange for his guilty plea to a felony, if he "successfully completed his probation, the case would be reopened and he would be convicted of a misdemeanor." *Id.* at 425. The trial court, however, "concluded that it lacked the power to implement" that provision of the plea agreement and refused to incorporate it when imposing sentence. *Id.*

¶ 9. We rejected the defendant's argument that the court had erred in refusing to accept the plea agreement provision for reopening the case and amending the charge upon successful completion of probation. We explained as follows:

> The agreement was that the judgment of conviction would be amended, not the charge. No prosecutor can amend a judgment.

Section 973.09(1)(a), Stats., provides in relevant part: "The court may impose any conditions [on probation] which appear to be reasonable and appropriate." Hayes asserts that because the promise of a milder judgment in exchange for a successful probation is a reasonable condition of probation, sec. 973.09(1)(a) authorizes the reopening provision. Hayes is wrong. He confuses rewards with conditions. He proposes an additional reward for successful probation. The only reward for successful probation is discharge.

. . . .

We conclude that the trial court lacked the power to impose probation in accordance with the reopening provision in the plea agreement. The court did not abuse its discretion when refusing to do so.

*Id.* at 427–28 (footnotes omitted).

¶ 10. Dawson contends that the virtually identical provision in his plea agreement with the State in this case is similarly unenforceable. Because he relied on the possibility of ultimately avoiding a felony conviction when entering his plea, a possibility that did not, in fact, exist, Dawson claims that his plea was not knowingly and voluntarily entered. We agree.

██

¶ 11. The State responds in several ways. First, although not necessarily conceding that the reopen-and-amend provision was "illegal," the State argues that the inclusion of an illegal provision in a plea agreement does not render a plea unknowing or involuntary because only a lack of knowledge of (1) the nature of the charge pled to, (2) the potential penalties upon conviction, or (3) the constitutional protections being waived can support such a conclusion. Although a defendant's lack of understanding regarding any of the items the

State cites is sufficient to render a plea unknowing or involuntary, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976), they are not the only misunderstandings that may do so. A plea agreement that leads a defendant to believe that a material advantage or right has been preserved when, in fact, it cannot legally be obtained, produces a plea that is "as a matter of law . . . neither knowing nor voluntary." *See State v. Riekkoff*, 112 Wis. 2d 119, 128, 332 N.W.2d 744 (1983).

¶ 12. The defendant in *Riekkoff* pled guilty believing, "with the acquiescence of the trial court and the prosecutor," that "he had preserved his right of [appellate] review, when as a matter of law he could not." *Id*. The supreme court noted that the legally unenforceable stipulation for appellate review was "a primary inducement" for the defendant's guilty plea. *Id*. at 129. The court concluded that these circumstances resulted in a plea that was "neither knowing nor voluntary," thereby entitling the defendant to withdraw it. *Id*. at 128.

¶ 13. Here, the record shows that the reopen-and-amend provision was a "primary inducement" for Dawson's no contest plea, that he believed when he entered his plea that a post-probation reopening of his case to reduce the charge was possible and that neither the State nor the trial court disabused him of that notion at any time prior to his plea, conviction and sentencing. In his statement to the court at sentencing, Dawson twice referred to the importance to him of the possibility of avoiding a permanent felony conviction. Following Dawson's allocution, the prosecutor explained to the court that "[t]he agreement . . . called for upon successful completion of probation we'd amend to physical abuse of a child," but that there were conditions on the State's promise: "[o]ne, five years has to pass, and two, Mr. Dawson has to successfully complete

probation." The court then added, "[a]nd the Court has to review all of the documents of his time on probation and everything else," noting further that "I just wanted to verify the record reflected Mr. Dawson's agreement in that regard and understanding."

¶ 14. Thus, as in *Riekkoff*, Dawson entered his plea under a misapprehension that he had preserved the possibility of a material benefit to him that was legally impossible for him to obtain, and the State and the trial court acquiesced in this mistaken view. We therefore conclude that Dawson's plea was "neither knowing nor voluntary," and he must be permitted to withdraw it. *Id.*; *also see State v. Woods*, 173 Wis. 2d 129, 140, 496 N.W.2d 144 (Ct. App. 1992) (concluding that a plea agreement providing for a "legal impossibility" renders the resulting plea "neither knowing nor voluntary").

¶ 15. The State next argues that, because a sentencing court may reject any joint dispositional recommendation arising from a plea agreement, and because the trial court here rejected the proffered reopen-and-amend provision, Dawson's plea and conviction are valid. The principal flaw in the State's argument is that, even if the trial court had rejected the provision at sentencing, which we conclude it did not,[2] this would

---

[2] We note that the State's claim that the trial court "rejected" the provision at sentencing finds no support in the record. It is true that the trial court did not order the reopen-and-amend provision to be incorporated in the judgment of conviction, but neither did it say anything to indicate that it had rejected that part of the parties' plea agreement. To the contrary, the court's comments at sentencing, which we have quoted above, convey that the court was receptive to a motion to reopen and amend, upon the filing of which, the court would review "all of the documents of his time on probation and

not have cured the error stemming from the fact that Dawson was induced to enter his plea by a promise that the State could never keep. The fact that the trial court might not be persuaded to accept the reopen-and-amend provision does not mean that the opportunity to seek the reduction, and the possibility of obtaining it, were not strong incentives to Dawson to plead no contest. *Cf. Dairyland Greyhound Park, Inc. v. McCallum*, 2002 WI App 259, ¶ 16, 258 Wis. 2d 210, 655 N.W.2d 474 (concluding that, even though a contracting party had no "legally enforceable right" to a certain outcome, because it had bargained for the "opportunity to convince" a decision maker to permit it, the party had a substantial interest in preserving the decision maker's authority to do so).[3]

---

everything else." Notwithstanding the trial court's later observation (when denying Dawson's postconviction motion) that "nothing in the Court's record . . . indicates that this Court approved or accepted the proposal to reopen and amend," we conclude that the record similarly provides no support for the State's assertion that the court had rejected it.

[3] We note that the State also argues that *State v. Hayes*, 167 Wis. 2d 423, 481 N.W.2d 699 (Ct. App. 1992), on which Dawson principally relies, actually supports the trial court's action in denying Dawson's request to withdraw his plea. The State points out that, even though the trial court in *Hayes* explicitly rejected the reopen-and-amend provision in the plea agreement, we "affirmed the judgment and sentence that followed on the plea." We reject the State's suggestion that our holding in *Hayes* stands for the proposition that defendants who rely on the possibility of obtaining a benefit provided for in a plea agreement that cannot legally be conferred are not entitled to withdraw their pleas. The defendant in *Hayes* sought to have the bargained provision declared valid and enforceable. *See id.* at 426–27. There is no indication in our opinion that the defendant in *Hayes* asked to withdraw his plea if the provision

¶ 16. The State's third contention is that *Hayes*, properly read, does not govern the present facts. The State notes that, at one point in our opinion, we characterized the plea agreement in *Hayes* as providing that "the judgment of conviction would be amended, not the charge," and we commented that "[n]o prosecutor can amend a judgment" of conviction. *Hayes*, 167 Wis. 2d at 427. The State sees a distinction in the fact that, here, the prosecutor agreed only to move the trial court to reopen the case and to amend the underlying charge, not the judgment of conviction. The State's attempt to distinguish *Hayes* is, at best, unpersuasive.

¶ 17. We note first that in the opening paragraph of *Hayes*, we described the plea agreement provision at issue as follows: "if Hayes successfully completed his probation, the case would be reopened and he would be convicted of a misdemeanor." *Id.* at 425. That is precisely what the agreement in this case called for. We conclude that the agreement before us is indistinguishable from that in *Hayes*.

¶ 18. Moreover, our later characterization of the agreement in *Hayes* as calling for an amendment to the judgment of conviction was in the context of refuting an argument that, because prosecutors can amend charges before a judgment of conviction is entered, we should conclude that they can also agree to do so afterward. *See id.* at 426–27. Our point in *Hayes* was that, once a charge becomes a conviction, a prosecutor may *not* amend it, because amending the charge would also necessarily require amending the judgment of conviction to reflect the reduced charge, which no statute authorizes either a prosecutor or trial court to do. *Id.* at

could not be enforced, and we did not address whether his plea was rendered unknowing and involuntary because of the unenforceable provision.

429

427. We are bound by that conclusion. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997).[4]

¶ 19. The State next asserts that the plea agreement permits the State to move to reopen-and-amend at any time, including *before* Dawson completes his five-year term of probation. The record, however, does not support the State's assertion of what the parties agreed to. At the plea hearing, the prosecutor told the court that the plea agreement included a provision that "should there be *a successful completion of the period of probation,* we would move to reopen and amend the charge to intentional physical abuse of a child" (emphasis added). Later, at sentencing, the prosecutor again explained to the court that "[t]he agreement, your Honor, called for *upon successful completion of probation* we'd amend to physical abuse of a child" (emphasis added).

¶ 20. As *Hayes* makes clear, this "additional reward for successful . . . probation" is not authorized by law. *Hayes*, 167 Wis. 2d at 428. The State asserts, however, that nothing in *Hayes* prohibits it from moving to reopen and amend the charge several months before the end of Dawson's probation term. It argues that we should permit Dawson's plea to stand with the proviso that the State time its motion in this fashion, thereby preserving "an agreement with a possibility of

---

[4] We commented in *Hayes* that it might be "desirable if trial courts could amend a judgment of conviction as an additional reward for successful completion of probation," pointing out that WIS. STAT. § 973.015(1) provides for expunction of the record of a conviction for a misdemeanor committed by a person under the age of twenty-one, "upon successful completion of a sentence." In the intervening twelve years, the legislature has not granted courts the authority we found lacking in *Hayes* to amend felony convictions to lesser charges.

performance." Although the agreement in *Hayes*, like this one, called for a motion to reopen and amend upon successful completion of probation, we do not read our decision as leaving open the loophole the State proposes.

¶ 21. What precluded enforcement of the reopen-and-amend provision in *Hayes* was not the timing of the motion but the lack of statutory authority for granting it. We concluded in *Hayes* that there was simply no statutory authority for a court to reopen a judgment convicting a defendant of a felony and amend it to a lesser charge. *Id*. at 427–28. We now conclude that this is so regardless of whether a motion seeking to reopen and amend is filed before or after a probation term has ended.

¶ 22. Next, noting that the trial court was under no obligation to grant a future motion to reopen the case and amend the charge, the State asserts that Dawson could not have reasonably relied when entering his plea on ever obtaining that result. We agree with the State that there were no guarantees given to Dawson in the plea agreement that his charge would definitely be reduced to a lesser one at some future time. As we have noted, Dawson was informed before entering his plea that the sentencing court was not bound by any plea agreement between him and the State, and the court could have expressly rejected the provision at the time of sentencing (although we have concluded that it did not do so, see footnote 2). The State's obligation to make the motion was also conditioned on Dawson successfully completing his probation. Finally, of course, the State did not promise, because it could not, that the court would grant the motion if and when it was made.

¶ 23. The State's argument is essentially that, because the postconviction reduction of Dawson's

charge was conditional and subject to a future exercise of trial court discretion, the fact that it was also impossible to achieve should be deemed of little or no consequence. We disagree. Despite the fact that Dawson's ultimate attainment of a reduced charge was by no means certain, what he bargained for and relied on in deciding to plead no contest to felony sexual assault was the *possibility* of achieving that outcome. He was told that if he successfully completed probation, the State would move to reopen and amend the charge to a lesser one, which presumably both he and the State would then attempt to persuade the court to order. As we have explained in discussing the State's argument that the trial court rejected the reopen-and-amend provision at sentencing, the fact that the trial court might not be persuaded to ultimately grant the reduction in charge does not mean that the opportunity to seek the reduction, and the possibility of obtaining it, were not strong incentives to Dawson to plead no contest.

¶ 24. The State's final argument is that, because the reopen-and-amend provision is conditioned on Dawson's successful completion of five years' probation (which will not occur until 2006 and, as the State notes, may *never* occur if Dawson's probation is revoked), Dawson's claim is not yet "ripe" for adjudication. This argument, however, misses the point of Dawson's claim and the relief he seeks. He is not asking for the plea agreement to be enforced, as did the defendant in *Hayes*; rather, Dawson wants to withdraw his plea because he now knows he can never get what he bargained for, even if his performance on probation is exemplary. The infirmity in the plea agreement, and the unknowing and involuntary plea it produced, are readily apparent from the record as it now exists, and

there is thus no reason to require Dawson to wait until 2006 to seek to withdraw his plea. Moreover, it would be unfair to Dawson to require him to complete his term of probation before allowing him to request a plea withdrawal.

¶ 25. In sum, the State has not presented us with a valid rationale for upholding the denial of Dawson's plea withdrawal motion. Dawson has established that his plea was not knowing and voluntary because it was induced by the promise of a possible future benefit that could never be conferred. We thus conclude that, in order to avoid a manifest injustice, Dawson must be permitted to withdraw his plea. On remand, therefore, the criminal proceedings shall recommence with an arraignment on the charge set forth in the information. Additionally, if the State so requests, the charge of failing to report to jail in Dane County Case No. 00–CF-2310, which was dismissed as part of the plea agreement, shall be ordered reinstated. *See State v. Howard*, 2001 WI App 137, ¶ 38 n.11, 246 Wis. 2d 475, 630 N.W.2d 244 ("A defendant who successfully withdraws his or her pleas no longer has the benefit of any concessions or dismissals initiated by the State pursuant to the plea bargain.").

## CONCLUSION

¶ 26. For the reasons discussed above, we reverse the appealed judgment and order, and we remand the case to the circuit court for proceedings consistent with this opinion.

*By the Court.*—Judgment and order reversed and cause remanded with directions.