# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:          2021AP1339-CR

†Petition for Review Filed

Complete Title of Case:


**STATE OF WISCONSIN,**

**PLAINTIFF-RESPONDENT,**

**V.**

**TRACY LAVER HAILES,**

**DEFENDANT-APPELLANT.**


| | |
|---|---|
| Opinion Filed: | May 9, 2023 |
| Submitted on Briefs: | April 13, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Brash, C.J., Dugan and White, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Christopher P. August* of the *Office of the State Public Defender* in Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joshua L. Kaul* and *Kara L. Janson* of the *Wisconsin Department of Justice* in Madison. |

# COURT OF APPEALS
# DECISION
# DATED AND FILED

## May 9, 2023

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.   **2021AP1339-CR**

Cir. Ct. No. **2015CF4326**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TRACY LAVER HAILES,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and orders of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ and MICHAEL J. HANRAHAN, Judges. *Affirmed*.

Before Brash, C.J., Dugan and White, JJ.

¶1 DUGAN, J. Tracy Laver Hailes appeals his judgment of conviction and two orders of the circuit court denying his motions for postconviction relief.[1] On appeal, Hailes argues that the circuit court erroneously denied his motion to suppress evidence of drug activity at two apartments located at 618 North 30th Street (30th Street). He also argues that two penalty enhancers—one for repeat offenders and the other for second or subsequent offenders, found in WIS. STAT. § 939.62 (2021-22),[2] and WIS. STAT. § 961.48—were erroneously applied to the drug offense charges in his case—he was charged with and pled guilty to the drug charges with both of the enhancers. Hailes further argues that he is entitled to plea withdrawal, sentence modification, or resentencing based on the fact that he was erroneously charged with and pled guilty to the drug charges with both of the penalty enhancers.

¶2 We conclude that the circuit court properly denied Hailes' motion to suppress because the affidavits attached to the search warrants established probable cause to search the two apartments located at 30th Street. We further conclude that the two penalty enhancers were erroneously applied to Hailes because the plain meaning of WIS. STAT. § 973.01(2)(c) states that either WIS. STAT. § 939.62 "or" WIS. STAT. § 961.48 can apply to his drug charges—but not both. However, we nevertheless reject Hailes' argument that he is entitled to plea withdrawal, sentence modification, and resentencing on the basis that these two penalty enhancers were applied to him. Hailes fails to demonstrate that the penalty enhancers in any way

---

[1] The Honorable Janet C. Protasiewicz presided over Hailes' plea and sentencing and entered the judgment of conviction and order denying Hailes' first motion for postconviction relief. The Honorable Michael J. Hanrahan entered the order denying Hailes' supplemental motion for postconviction relief.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

induced him to plead guilty, such that he is entitled to plea withdrawal, and he fails to demonstrate that the penalty enhancers played any role at the sentencing hearing, such that he is entitled to sentence modification or resentencing. Accordingly, we affirm.

## BACKGROUND

¶3      In a criminal complaint filed on September 25, 2015, the State charged Hailes with nine counts related to drug operations that Hailes ran out of two apartments located at 30th Street. The charges arose from the execution of three search warrants issued for three apartments connected to Hailes. One of the apartments was located at 520 North 29th Street (29th Street) and the other two apartments were located at 30th Street. The nine charges issued by the State resulted from evidence recovered from the two apartments—apartment 102 and apartment 208—located at 30th Street. As to apartment 102, Hailes was charged with (1) possession of a firearm by a felon, (2) possession with intent to deliver heroin, (3) possession with intent to deliver cocaine, (4) possession with intent to deliver THC, and (5) keeping a drug house. As to apartment 208, Hailes was charged with (1) possession of a firearm by a felon, (2) possession with intent to deliver THC, (3) possession with intent to deliver cocaine, and (4) keeping a drug house. All the charges carried the penalty enhancer for a repeat offender, *see* WIS. STAT. § 939.62(1), and all charges, with the exception of the two charges of possession of a firearm by a felon, carried the penalty enhancer for a second or subsequent offense, *see* WIS. STAT. § 961.48(1).

¶4      Hailes filed a motion to suppress the evidence recovered at the two apartments located at 30th Street on the basis that the search warrants failed to establish probable cause of illegal activity at either of the apartments. Rather, Hailes

contended that the affidavits attached to the search warrants only established probable cause of illegal activity at the apartment located at 29th Street, and there was no nexus with the activity at 29th Street such that the activity there constituted probable cause to search the apartments at 30th Street.

¶5      The circuit court denied Hailes' motion.[3]   At the hearing on the motion, the circuit court stated that the affidavits provided statements by a confidential informant describing that he saw Hailes at the apartment on 29th Street with "substantial amounts of cocaine and heroin and some marijuana and a couple guns" on two separate occasions.   The circuit court further noted that the confidential informant observed Hailes moving furniture into the apartment building located on 30th Street.   The circuit court also stated that the affidavits described an independent investigation done by the police in which the police observed Hailes' vehicles parked at the 30th Street address and a statement by an officer that, based on his training and experience, he knows that drug dealers have the tools of their trade located at their homes.   Thus, the circuit court found, "in tying all that together," the warrants were sufficient.

¶6      Hailes subsequently entered a plea to five of the original charges, with the remaining four charges dismissed and read in for sentencing purposes.   In all, Hailes pled guilty to two counts of possession of a firearm by a felon, as a repeater;[4] one count of possession with intent to deliver heroin, as a repeater and as a second

---

[3]  The Honorable Timothy Witkowiak denied Hailes' motion to suppress.

[4]  *See* WIS. STAT. §§ 941.29(2)(a), 939.50(3)(g), 939.62(1)(b).

or subsequent offense;[5] and two counts of possession with intent to deliver cocaine, as a repeater and as a second or subsequent offense.[6] He was then sentenced on all charges to twenty-three years of imprisonment, composed of fourteen years of initial confinement and nine years of extended supervision.

¶7 Hailes filed his first motion for postconviction relief, in which he argued that he was entitled to plea withdrawal on the grounds that the repeat offender and the second or subsequent offense penalty enhancers were erroneously applied to him. *See* WIS. STAT. §§ 939.62(1) (repeat offender), 961.48(1) (second or subsequent offense). He argued that pursuant to WIS. STAT. § 973.01(2)(c), either penalty enhancer could apply to his drug charges, but not both. He alternatively requested sentence modification or resentencing based on the erroneous application of both penalty enhancers to his case. Relying on *State v. Maxey*, 2003 WI App 94, 264 Wis. 2d 878, 663 N.W.2d 811, the circuit court denied his motion and found that both penalty enhancers were properly applied to his case. As a result, the circuit court did not reach Hailes' remaining arguments for plea withdrawal, sentence modification, or resentencing.

¶8 Hailes subsequently filed a supplemental postconviction motion. He again argued for plea withdrawal based on an erroneous application of both penalty enhancers to his case. However, in his supplemental postconviction motion, he raised the additional arguments that he was entitled to plea withdrawal based on the legal impossibility of both penalty enhancers applying to his drug charges and the illusory benefit provided by his plea deal. The circuit court again denied Hailes'

---

[5] *See* WIS. STAT. §§ 961.41(1m)(d)3., 939.50(3)(d), 939.62(1)(c), 961.48(1)(a).

[6] Count three involved more than ten grams but not more than fifty grams. *See* WIS. STAT. §§ 961.41(1m)(cm)4., 939.50(3)(c), 939.62(1)(c), 961.48(1)(a). Count eight involved one gram or less. *See* WIS. STAT. §§ 961.41(1m)(cm)1g., 939.50(3)(g), 939.62(1)(b), 961.48(1)(b).

motion and found that both penalty enhancers were properly applied to his drug charges.

¶9 Hailes now appeals. Additional relevant facts will be set forth below as necessary.

## DISCUSSION

¶10 On appeal, Hailes raises two main arguments. First, Hailes argues that the circuit court erroneously denied his motion to suppress the evidence recovered from the two apartments located at 30th Street. Second, Hailes argues that the two penalty enhancers found in WIS. STAT. § 939.62(1) and WIS. STAT. § 961.48(1) were erroneously applied to him, and as result, he is entitled to plea withdrawal. In the alternative, he argues that he is entitled to sentence modification or resentencing. We address each argument in turn.

### I.    Motion to Suppress

¶11 Hailes first argues that the circuit court erroneously denied his motion to suppress because there was no probable cause to search the apartments located at 30th Street. In particular, Hailes argues that the affidavits attached to the search warrants did not establish probable cause of illegal activity at the two apartments at the 30th Street address. He contends that there was no nexus between his drug-related activity observed by the confidential informant at the apartment at 29th Street and his conduct at the two apartments at 30th Street, and therefore, there was

no probable cause to believe that evidence of criminal activity would have been found at 30th Street.[7]

¶12　We review a circuit court's denial of a motion to suppress evidence using a two-step standard. *State v. Lonkoski*, 2013 WI 30, ¶21, 346 Wis. 2d 523, 828 N.W.2d 552. We will uphold the circuit court's findings of fact unless they are clearly erroneous, and we review independently the application of the facts to the constitutional principles. *Id.*

¶13　Hailes contends that the circuit court erroneously denied his motion to suppress because the affidavits attached to the search warrants failed to establish probable cause. "Search warrants may issue only upon 'a finding of probable cause by a neutral and detached magistrate.'" *State v. Ward*, 2000 WI 3, ¶21, 231 Wis. 2d 723, 604 N.W.2d 517 (citation omitted). "[W]e accord great deference to the determination made by the warrant-issuing magistrate," and the defendant bears the burden to show "that the facts are clearly insufficient to support a probable cause finding." *Id.*

¶14　Probable cause is "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit" that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Higginbotham*, 162 Wis. 2d 978, 990, 471 N.W.2d 24 (1991) (citation omitted). "[A] probable cause determination must be based upon what a reasonable magistrate can infer from the information presented by the police." *Ward*, 231 Wis. 2d 723,

---

[7] Hailes concedes that there was probable cause to search the apartment at 29th Street, and he only takes issue with the probable cause to search the two apartments located at 30th Street, which he contends was based solely on his activities witnessed at the 29th Street apartment. Thus, we accept his concession that there was probable cause to search the apartment at 29th Street.

¶26. "The test is not whether the inference drawn is the only reasonable inference. The test is whether the inference drawn is a reasonable one." *Id.*, ¶30.

¶15 In this case, we conclude that there was a reasonable inference that evidence of drug-related activity would be found at the two apartments located at 30th Street, given all the circumstances set forth in the affidavits attached to the search warrants. Here, we turn first to the substance of the attached affidavits in more detail. As both parties recognize, the affidavits attached to the search warrants in this case are nearly identical, with each affidavit containing information provided by an officer, a confidential informant, and Hailes' probation agent.

¶16 In those affidavits, the officer described his experience conducting drug trafficking investigations and his participation in the execution of search warrants related to those investigations. Based on this experience, he described that he has personally recovered controlled substances, drug paraphernalia, firearms, and ammunition "located in elaborately hidden compartments within homes" of drug traffickers and that drug traffickers "commonly" have firearms and ammunition "either in their residences and/or in other locations where they exercise control and domination." The officer further described that, based on his experience, drug traffickers keep records and other evidence of their drug trafficking activities in their residences.

¶17 The officer then provided that he received the following information from a confidential informant about Hailes' activities: Hailes trafficked cocaine, heroin, and marijuana at an apartment located at 29th Street during the day, Hailes kept the drugs in a red shoebox on top of the refrigerator at that address, Hailes was on probation and had to wear a GPS monitoring bracelet, and that Hailes stayed at an apartment located at 30th Street during his monitoring hours. Hailes had two

9

vehicles—a black Infiniti and a white Chevrolet—which the informant had seen Hailes driving and had seen them at both the 29th Street and the 30th Street addresses. The informant additionally observed Hailes with a firearm when driving the black Infiniti. The officer further described the police investigation confirming Hailes' connection to these two vehicles based on observation of the 30th Street location and records of traffic stops in which Hailes was driving one of the two vehicles.

¶18     The officer also obtained the following information from Hailes' probation agent and the confidential informant:  Hailes was reportedly living in apartment 307 at 30th Street, but stated that he would be moving to apartment 102 at 30th Street. However, Hailes was also seen moving furniture into apartment 208 at 30th Street. Additionally, during an unscheduled visit by the probation agent, the agent saw various extension cords and telephone wires were running from apartment 307 to apartment 208. The officer further stated that, in his training and experience, an individual on probation who is still involved in drug trafficking activities will maintain multiple residences in order to avoid detection, a subsequent investigation revealed that Hailes was paying the utilities at apartment 208, and the presence of cords running from apartment 307 to apartment 208 was an attempt to defeat the electronic monitoring equipment Hailes was required to wear as a condition of his probation.

¶19     The probation agent also told the officer that, when the probation agent arrived for unscheduled visits, the agent was greeted at the locked front door of the apartment building by a resident, the resident then located the apartment manager, and then the apartment manager unlocked the door for the probation agent and accompanied the probation agent to Hailes' location within the apartment building. The probation agent further stated that he had observed what he believed

to be lookouts at the apartment building and that these individuals appeared to be monitoring the premises by walking the perimeter of the property and sitting at the front door.

¶20 Finally, the affidavit referenced Hailes' criminal record, which dates back to 2004 and contains multiple felony convictions and arrests for drug-related activity. He had convictions for drug violations in 2011, 2012, and 2013, and eleven arrests for drug violations from 2004 to 2013.

¶21 Despite the information provided in the affidavits, Hailes nevertheless argues that the affidavits attached to the search warrants here were insufficient under *State v. Sloan*, 2007 WI App 146, 303 Wis. 2d 438, 736 N.W.2d 189, and fail to establish probable cause. We disagree.

¶22 In *Sloan*, we addressed the sufficiency of an affidavit for the search of a residence after the defendant there attempted to mail a package containing marijuana through UPS. *Id.*, ¶¶2, 28. The residence that was searched was listed as the return address on the package containing the marijuana. *Id.*, ¶¶2, 6. The defendant's address in Wisconsin Department of Transportation records matched the return address, and according to WE Energies records, the defendant also paid the utilities at that same address. *Id.*, ¶5. However, the residence was owned by a Leslee Ericksen (formerly Leslee Sloan), the defendant also had a Florida driver's license with a different address, and the defendant further told the UPS employee that he was shipping the package to himself in Florida. *Id.*, ¶¶2, 5.

¶23 Under the facts presented in *Sloan*, this court concluded that the affidavit failed to establish probable cause to search the residence at the return address on the package because the affiant "never tells the reader that he believes Sloan is, or has recently been, engaged in any criminal activity at the residence to

11

be searched, or why he believes that is the case." *Id.*, ¶31. Importantly, we noted several facts that were missing from the affidavit that could have supported a finding of probable cause, including surveillance of the residence that "suggests criminal activity might be afoot." *Id.*, ¶32. We emphasized that there was no report about drug-related or other suspicious activity at the residence, no claim of prior police reports of drug-related activity at the residence, and no claim that the defendant had prior involvement with drug activity. *Id.*

¶24 While the affidavits here may share some similarities to the affidavits in *Sloan*, a thorough reading of *Sloan* shows that it is inapplicable here. As clearly set forth in the affidavits to search the apartments at 30th Street, Hailes' probation agent observed what he believed to be suspicious activity at the two apartments, including the presence of lookouts monitoring the premises and extension cords running between the two apartments in a potential attempt to defeat the monitoring equipment used for Hailes' probation. Hailes also reported that he was moving to apartment 102, but he was instead seen moving furniture into apartment 208. Thus, many of the facts "suggest[ing] criminal activity might be afoot" and noted as missing in *Sloan*, 303 Wis. 2d 438, ¶32, are present in this case. Moreover, while there may be innocent explanations for some of these activities, as Hailes acknowledges, "[t]he test is not whether the inference drawn is the only reasonable inference," but rather "whether the inference drawn is a reasonable one." *See Ward*, 231 Wis. 2d 723, ¶30. Further, unlike the facts in *Sloan* where we stated that there was no claim that the defendant had prior involvement with drug activity, here, the record shows that Hailes had a long history of drug convictions and arrests dating back to 2004. Accordingly, we conclude that *Sloan* does not support Hailes' argument that the affidavits in this case are insufficient to sustain a finding of probable cause.

¶25 Additionally, while the confidential informant may have only seen Hailes with drugs at the 29th Street apartment, the apartments at 30th Street were nonetheless clearly linked to Hailes, given that he was seen driving from one address to the other and his probation agent regularly visited him at the 30th Street address. The probation agent also observed suspicious activity at the 30th Street address, and the officer clearly stated in the affidavit that, based on his experience, individuals involved in drug trafficking activities keep records or other items related to those activities at their residences. We conclude that taken together, the affidavits establish probable cause.

¶26 Consequently, we conclude that the affidavits attached to the search warrants establish probable cause to search the two apartments located at 30th Street, and the circuit court properly denied Hailes' motion to suppress.[8]

## II. Penalty Enhancers

¶27 Hailes next argues that the two penalty enhancers found in WIS. STAT. § 939.62(1) and WIS. STAT. § 961.48(1) were erroneously applied to him. Specifically, Hailes argues that the plain language of WIS. STAT. § 973.01(2)(c) provides that either the penalty enhancer found in § 939.62(1) "or" the penalty enhancer found in § 961.48(1) applies—but not both. He then argues that he is entitled to plea withdrawal because both of the penalty enhancers were applied to his drug charges in violation of § 973.01(2)(c). In the alternative, he argues that he is entitled to sentence modification or resentencing.

---

[8] Hailes additionally argues that the good faith exception does not save the unlawful search in this case. As a result of our conclusion, we do not address his argument. *See* **State v. Blalock**, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground.").

### A. *Interpretation of* WIS. STAT. *§ 973.01(2)(c)*

¶28    We first address Hailes' argument that both penalty enhancers cannot be applied to him under WIS. STAT. § 973.01(2)(c), the statute that governs the order in which penalty enhancers are applied when more than one applies to a case. This presents an issue of statutory interpretation. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *Id.*, ¶44. We review issues of statutory interpretation independently. *See State v. Arberry*, 2018 WI 7, ¶14, 379 Wis. 2d 254, 905 N.W.2d 832.

¶29    Turning to the text of the statute, WIS. STAT. § 973.01(2)(c) provides:

> 1. Subject to the minimum period of extended supervision required under par. (d), the maximum term of confinement in prison specified in par. (b) may be increased by any applicable penalty enhancement statute. If the maximum term of confinement in prison specified in par. (b) is increased under this paragraph, the total length of the bifurcated sentence that may be imposed is increased by the same amount.
>
> 2. If more than one of the following penalty enhancement statutes apply to a crime, the court shall apply them in the order listed in calculating the maximum term of imprisonment for that crime:
>
>    a. Sections 939.621, 939.623, 939.632, 939.635, 939.645, 946.42(4), 961.442, 961.46, and 961.49.
>
>    b. Section 939.63.

c. Section 939.62(1) or 961.48.

¶30    In his argument, Hailes highlights the use of the word "or" in subparagraph c. and contrasts the use of "or" in subparagraph c. with the use of the word "and" in subparagraph a.  He argues that the use of the word "or" indicates that only one of the penalty enhancers found in WIS. STAT. § 939.62(1) and WIS. STAT. § 961.48 can apply, but not both.

¶31    We agree.  "When the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings."  *See Pawlowski v. American Fam. Mut. Ins. Co.*, 2009 WI 105, ¶22, 322 Wis. 2d 21, 777 N.W.2d 67.  "The use of different words joined by the disjunctive connector 'or' normally broadens the coverage of the statute to reach *distinct*, although potentially overlapping sets."  *See id.* (emphasis added).  Thus, we conclude that the plain language of the statute clearly indicates that either § 939.62(1) "or" § 961.48 can apply to enhance a penalty, but not both.

¶32    By contrast, the State argues that *Maxey*, 264 Wis. 2d 878, controls. In *Maxey*, we addressed whether the penalty enhancers found in WIS. STAT. § 939.62(1) and WIS. STAT. § 961.48 could both be applied to a defendant at the same time, and we concluded that both could apply.  *Maxey*, 264 Wis. 2d 878, ¶23. There, however, we interpreted the two statutes without the benefit of WIS. STAT. § 973.01(2)(c).  Since our decision in *Maxey*, § 973.01(2)(c) went into effect.  *See* 2001 Wis. Act 109, § 1129 (creating § 973.01(2)(c)); *Maxey*, 264 Wis. 2d 878, ¶1 (interpreting the 1999-2000 version of the Wisconsin Statutes).  Consequently, we conclude that our prior conclusion in *Maxey* is inapplicable here, and our conclusion today is instead controlled by the plain language of § 973.01(2)(c), which plainly

15

instructs that § 939.62(1) "or" § 961.48 may be applied by the circuit court in calculating the maximum term of imprisonment, but not both.

¶33     Having concluded that both penalty enhancers cannot apply at the same time, we turn next to whether Hailes is entitled to any of the relief he seeks based on the application of both penalty enhancers to his drug charges in this case.

*B. Plea Withdrawal*

¶34     Hailes first argues that he is entitled to plea withdrawal on the basis of the erroneous application of both penalty enhancers to his drug charges. He makes this argument both on the grounds that his plea was not knowing, intelligent, and voluntary and that he received ineffective assistance of counsel. We address each argument for plea withdrawal in turn.

¶35     "A defendant is entitled to withdraw a guilty plea after sentencing only upon a showing of 'manifest injustice' by clear and convincing evidence." *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996) (citation omitted). A defendant may demonstrate a manifest injustice in several ways. *State v. Dillard*, 2014 WI 123, ¶37, 358 Wis. 2d 543, 859 N.W.2d 44. "One way is to show that the defendant did not enter the plea knowingly, intelligently, and voluntarily." *Id.* "When a guilty plea is not knowing, intelligent, and voluntary, a defendant is entitled to withdraw the plea as a matter of right because such a plea 'violates fundamental due process.'" *State v. Brown*, 2006 WI 100, ¶19, 293 Wis. 2d 594, 716 N.W.2d 906 (citation omitted). "Whether a defendant's plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact." *Dillard*, 358 Wis. 2d 543, ¶38. We uphold the circuit court's findings of historical facts unless they are clearly erroneous, and we independently determine whether

those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary. *Id.*

¶36 Hailes argues that his plea was "uninformed and its voluntariness compromised" because he was provided "affirmative misinformation" about the applicability of both penalty enhancers to his drug charges. The State argues that although Hailes claims that misinformation about the law "requires plea withdrawal," that is not what our supreme court has held. Citing ***Dillard***, 358 Wis. 2d 543, ¶39, the State asserts that "affirmative misinformation about the law … *can* support a holding that" plea withdrawal is warranted, but not in all cases. In his reply brief, Hailes states that he does not dispute, and never claimed, that any inaccuracy, no matter its materiality, "torpedoes" any otherwise knowing, intelligent, and voluntary plea. We agree that not every misinformation about the law entitles a defendant to withdraw his or her plea. Thus, the issue here is whether the misinformation about the applicability of both of the enhancers entitles Hailes to withdraw his pleas in this case.

¶37 Although Hailes states that he does not dispute and never claimed that any inaccuracy, no matter its materiality, "torpedoes" any otherwise knowing, intelligent, and voluntary plea, he argues that the cases that he cites stand for that very proposition:

> Numerous cases have held that affirmative misinformation about the law given to the defendant requires plea withdrawal because the plea is uninformed and its voluntariness compromised. *See, e.g.*, ***State v. Riekkoff***, 112 Wis. 2d 119, 332 N.W.2d 744 (1983) (holding that when the defendant pled guilty, incorrectly believing that he could seek appellate review of an evidentiary order, he misunderstood the effects of his plea and the plea was therefore involuntary); [***State v. Dawson***, 2004 WI App 173, 276 Wis. 2d 418, 688 N.W.2d 12] (holding that the legally unenforceable reopen-and-amend provision of the defendant's plea deal rendered the plea involuntary); ***State v.***

17

> ***Woods***, 173 Wis. 2d 129, 496 N.W.2d 144 (Ct. App. 1992) (holding that a guilty plea entered at least in part based on inaccurate legal information about sentencing was neither knowing or voluntary); ***State v. Brown***, 2004 WI App 179, 276 Wis. 2d 559, 687 N.W.2d 543 (holding that when the State promised to drop, but did not drop, all charges requiring the defendant to register as a sex offender or subjecting the defendant to a Chapter 980 civil confinement, the defendant's plea was involuntary).

Hailes further argues that:

> Significantly, case law does not require that the decision to plead be based exclusively on the misinformation the defendant received. [***Dillard***, 358 Wis. 2d 543, ¶60.] Rather, a guilty or no-contest plea is not voluntary unless the defendant is "fully aware of the direct consequences [of his plea], including the actual value of any commitments made to him by the court, prosecutor, or his own counsel…" ***Id.***

¶38     However, as noted above, and acknowledged by Hailes, a defendant is not entitled to withdraw a guilty plea whenever he or she is provided misinformation about the law.  Rather, courts address the issue under the totality of the circumstances.  *See **Dillard***, 358 Wis. 2d 543, ¶34 ("We first address whether, under the totality of the circumstances, the defendant has the right as a matter of law to withdraw his no-contest plea on the ground that it was not entered knowingly, intelligently, and voluntarily.").  We conclude that the cases discussed below demonstrate that the totality of the circumstances includes whether the misinformation provided to Hailes in part induced his decision to enter his plea.

¶39     In the cases cited by Hailes in support of his argument, those courts concluded that the defendant, in part, entered his or her plea based on the misinformation. In ***State v. Woods***, 173 Wis. 2d at 140, the court stated, "The record is clear that Woods, at least in part, made the decision to plead guilty based on

inaccurate information provided to him by the lawyers and judge."[9]  In ***State v. Riekkoff***, 112 Wis. 2d at 120-21, Riekkoff pled guilty pursuant to a plea agreement that had preserved his right to appeal the circuit court's denial of his motion to admit evidence that he sought to introduce at trial.[10]  Our supreme court stated, "One thing, however, clearly stands out from the record, and that is that Riekkoff pleaded guilty believing that he was entitled to an appellate review of the reserved issue."  ***Id.*** at 128.

¶40     Hailes also cites to ***State v. Brown***, 276 Wis. 2d 559, to support his argument.  However, in ***Brown***, this court concluded that "Brown's plea agreement was purposefully crafted to only include pleas to charges that would not require him to register as a sex offender or be subject to post-incarceration commitment under WIS. STAT. ch. 980."  ***Id.***, ¶13.  Clearly, Brown entered his plea primarily because the court, the prosecutor, and his counsel told him that he could plead no contest to the felony charges and not be subject to sex offender registration or post-incarceration commitment, but as a matter of law, he could not.  Hailes further cites to ***State v. Dawson***, 276 Wis. 2d 418, to support his argument.  However, in ***Dawson***, this court allowed Dawson to withdraw his plea because he "relied on … a possibility that did not, in fact, exist" when deciding to enter a plea.  ***Id.***, ¶10.

---

[9] The inaccurate information in ***Woods*** was that an adult court could impose an adult sentence consecutive to a juvenile court disposition.  ***State v. Woods***, 173 Wis. 2d 129, 132-33, 496 N.W.2d 144 (Ct. App. 1992).

[10] Riekkoff had sought to introduce the opinion testimony of a psychiatrist that, because of his intoxication, he lacked the mental capacity to form the requisite intent for the charge of burglary.  ***State v. Riekkoff***, 112 Wis. 2d 119, 121, 332 N.W.2d 744 (1983).  When he appealed the circuit court's denial of his motion, this court refused to review the circuit court's exclusion of the psychiatric testimony.  ***Id.*** at 122.

¶41    Lastly, Hailes argues that ***Dillard***, 358 Wis. 2d 543, supports his argument.[11]    However, in ***Dillard***, our supreme court concluded that "'the fundamental error of law [about the applicability of the persistent repeater enhancer to the defendant] that *pervaded the plea negotiations* and sentencing' rendered the defendant's plea unknowing, unintelligent, and involuntary." ***Id.***, ¶35 (emphasis added).  The court further noted that "the State acknowledges that trial counsel also identified the dropped persistent repeater enhancer as 'the most significant factor' contributing to [Dillard's] decision to enter a plea of no contest." ***Id.***, ¶54.  Thus, the court concluded that Dillard presented a persuasive account of "why, absent the misinformation he received about the persistent repeater enhancer, he would not have entered a no-contest plea, why he would have gone to trial, and why the no-contest plea was not knowing, intelligent, and voluntary." ***Id.***, ¶52.

¶42    In contrast to the cases above that Hailes cited, we conclude that Hailes has failed to establish that the penalty enhancers in any way induced his plea, such that Hailes can now claim that his plea was not knowing, intelligent, and voluntary.  Rather, the record here demonstrates that Hailes was induced to enter a plea as a result of the circuit court's denial of his motion to suppress and the strength of the State's case, instead of induced by any "affirmative misinformation" provided to him about the penalty enhancers.

¶43    After the circuit court denied Hailes' motion to suppress, the court asked, "[H]ow would you like the matter calendared?"  After taking a moment to

---

[11] The court phrased the issue as "whether, under the totality of the circumstances, the defendant has the right as a matter of law to withdraw his no-contest plea on the ground that it was not entered knowingly, intelligently, and voluntarily." ***State v. Dillard***, 2014 WI 123, ¶3, 358 Wis. 2d 543, 859 N.W.2d 44.  The inaccurate information involved in the case was that the State, the circuit court, and Dillard's trial counsel mistakenly advised him that he was facing a mandatory sentence of life in prison without the possibility of extended supervision for his charge. ***Id.***

talk with Hailes, trial counsel requested to have the matter set for plea and sentencing and indicated that he would like to obtain details of the State's offer.

¶44    Then, at a subsequent hearing, the circuit court confirmed the State's final offer, and Hailes' knowledge of that offer. At that time, Hailes stated that he was rejecting the State's offer. The court then turned to setting the matter for trial, and asked the State how many days it would need. The State described its evidence as follows:

> There are really two different scenes at issue here, two apartments that the defendant was alleged to be in control of. The defendant also made a very complete statement that the State will probably be playing in most of its entirety. There's obviously the crime lab testimony. There's fingerprint testimony. I think that it's more than a three-day trial likely.

Hailes then interrupted saying, "I'd like to address something to the court." After Hailes spoke with trial counsel, trial counsel relayed, "I think what he's saying is he does want to resolve it." The State then agreed to reopen its offer and continue discussions, and the circuit court set the matter over for another hearing. Hailes then said, "I will appreciate if we can resolve this matter before a trial issue. … I would love to take the—take a plea offer and plead guilty, but I'm just not willing to accept the offer that the State is offering at this point." Hailes continued, "But I would—I would recommend that I would plead guilty, and I don't know if—if I don't accept the State's offer, do I have to—am I forced to go to trial if I doesn't—if I don't accept the State's offer?"

¶45    Accordingly, the record shows that Hailes was not in any way motivated by the application of the penalty enhancers when he decided to plead guilty. Rather, Hailes was motivated to plead guilty first, by the denial of his motion to suppress and second, by the evidence the State described it would present at his

trial. Thus, we conclude that Hailes is not entitled to plea withdrawal on the grounds that his plea was not knowing, intelligent, and voluntary as a result of any "affirmative misinformation" about the application of the two penalty enhancers to his drug charges. *See Dawson*, 276 Wis. 2d 418, ¶10 (allowing plea withdrawal when the defendant "*relied on* … a possibility that did not, in fact, exist" when deciding to enter a plea (emphasis added)). We conclude that Hailes has not presented a persuasive account of why, absent the misinformation he received about the two penalty enhancers, he would not have entered guilty pleas, and why he would have gone to trial.

¶46 As previously stated, Hailes also seeks plea withdrawal on the grounds that he received ineffective assistance of counsel. Another way "to demonstrate manifest injustice [for plea withdrawal] is to establish that the defendant received ineffective assistance of counsel." *Dillard*, 358 Wis. 2d 543, ¶84. A defendant must show two elements to establish that his or her counsel's assistance was constitutionally ineffective: (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. In the context of an argument for plea withdrawal, the prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

¶47 "An ineffective assistance of counsel claim presents a mixed question of fact and law." *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. "We will not reverse the circuit court's findings of fact unless they are clearly

22

erroneous." ***Id.*** "We independently review, as a matter of law, whether those facts demonstrate ineffective assistance of counsel." ***Id.***

¶48 In addressing Hailes' claim of plea withdrawal based on ineffective assistance of counsel, we conclude that trial counsel's performance was not deficient, nor was Hailes prejudiced by any presumed deficient performance.

¶49 As to trial counsel's performance, we do not consider trial counsel's performance deficient for any failure to raise a novel legal issue. *See **State v. Lemberger***, 2017 WI 39, ¶18, 374 Wis. 2d 617, 893 N.W.2d 232. At the time of the proceedings in this case, under the holding in ***Maxey***, which had not been reversed, both penalty enhancers could apply to Hailes' case, and there was no case law interpreting WIS. STAT. § 973.01(2)(c), as we have done in this decision.[12] The application of both penalty enhancers to Hailes was, therefore, a novel issue, and we do not consider trial counsel's performance deficient for failing to raise this issue.

¶50 As to prejudice, the record clearly demonstrates, as discussed previously, that Hailes was motivated to plead guilty, not by anything related to the penalty enhancers, but by the circuit court's denial of his motion to suppress and the strength of the State's case. Moreover, in his postconviction motion and on appeal Hailes does not allege, let alone show, why, absent the misinformation he received about the two penalty enhancers, he would not have entered guilty pleas, and why he would have gone to trial.

---

[12] We also note the fact that the circuit court relied on the holding in ***State v. Maxey***, 2003 WI App 94, 264 Wis. 2d 878, 663 N.W.2d 811, when it denied Hailes' motion and found that both penalty enhancers were properly charged in this case, supports our conclusion that the issue was novel at the time Hailes entered his pleas.

¶51    Under the original charges and assuming the application of only one penalty enhancer, Hailes faced a maximum period of imprisonment of 151 years and 6 months for the nine original charges. *See* WIS. STAT. §§ 939.50(3)(c), (d), (g), (h), (i), 939.62(1)(b)-(c) (2013-14). Under the plea agreement, four charges were dismissed outright, and the maximum period of imprisonment, still assuming the application of only one penalty enhancer, was reduced by a period of 32 years and 6 months to a total of 119 years for the charges to which Hailes pled guilty. *See* WIS. STAT. §§ 939.50(3)(c), (d), (g), 939.62(1)(b)-(c) (2013-14). Applying both penalty enhancers to the charges to which Hailes pled guilty, Hailes faced a maximum term of imprisonment of 135 years, which amounts to a difference of 16 years. *See* WIS. STAT. §§ 939.50(3)(c), (d), (g), 939.62(1)(b)-(c), 961.48(1)(a), (b) (2013-14). Given the possible maximum terms of imprisonment Hailes faced, Hailes fails to explain why he would not have accepted the State's offer and instead proceeded to trial, if he knew that both penalty enhancers could not apply to his case.

¶52    Hailes has, therefore, also failed to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See **Lockhart***, 474 U.S. at 59.

¶53    Consequently, we reject Hailes' argument for plea withdrawal based on his argument that he received ineffective assistance of counsel, and we conclude that Hailes is not entitled to plea withdrawal for this reason.

*C. Sentence Modification*

¶54    Hailes alternatively argues that he is entitled to sentence modification based on the existence of a new factor. However, we conclude that Hailes fails to state a claim for sentence modification.

24

¶55    "Whether a fact or set of facts presented by the defendant constitutes a 'new factor' is a question of law," which we review independently. *State v. Harbor*, 2011 WI 28, ¶33, 333 Wis. 2d 53, 797 N.W.2d 828. However, "whether that new factor justifies sentence modification is committed to the discretion of the circuit court, and we review such decisions for erroneous exercise of discretion." *Id.*

¶56    A new factor is defined as:

> a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

*Id.*, ¶40 (citation omitted). "The defendant has the burden to demonstrate by clear and convincing evidence the existence of a new factor." *Id.*, ¶36.

¶57    In short, we conclude that Hailes fails to demonstrate that the fact that he pled guilty to the drug charges with both penalty enhancers was "highly relevant to the imposition of sentence." *See id.*, ¶40. Hailes points to nothing in the sentencing transcript to indicate that dismissal of one of the two penalty enhancers would have been highly relevant to the circuit court's sentence, despite bearing the burden of demonstrating "*by clear and convincing evidence*" that a new factor exists. *See id.*, ¶36 (emphasis added). Indeed, as evident from the sentencing hearing, the circuit court's primary concern was the protection of the public from Hailes' "very high-end dealing." At the sentencing hearing, the circuit court stated, "So when we talk about the seriousness of the offense, sir, it doesn't get more serious than the type of behavior that you were engaging in and the need to protect the community." Moreover, the circuit court never mentioned the application of either penalty enhancer at the time of sentencing, and importantly, the sentence

imposed did not even include an enhanced term of imprisonment.[13] Consequently, we conclude that Hailes is not entitled to sentence modification.

### D. Resentencing

¶58 Hailes additionally makes the alternative argument that he is entitled to resentencing. In this regard, Hailes argues that he was sentenced using inaccurate information when the circuit court sentenced him using both penalty enhancers. We conclude that Hailes has failed to present a claim for resentencing based on inaccurate information.

¶59 "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. We independently review a defendant's claim that he has been sentenced on inaccurate information. *Id.*

¶60 "A defendant who requests resentencing due to the circuit court's use of inaccurate information at the sentencing hearing 'must show both that the information was inaccurate and that the court actually relied on the inaccurate information at sentencing.'" *Id.*, ¶26 (citation omitted). Actual reliance generally requires that the sentencing court give "explicit attention" or "specific consideration" to the inaccurate information and that the inaccurate information

---

[13] As previously noted, Hailes was sentenced to twenty-three years of imprisonment, composed of fourteen years of initial confinement and nine years of extended supervision. Hailes faced a maximum term of imprisonment of ninety-five years on the charges to which he pled guilty, without the penalty enhancers. *See* WIS. STAT. §§ 941.29(2)(a), 961.41(1m)(d)3., 961.41(1m)(cm)4., 961.41(1m)(cm)1g., 939.50(3)(c), (d), (g) (2013-14). As it applies to initial confinement alone, Hailes faced a maximum term of initial confinement of fifty-five years, without the penalty enhancers. *See* WIS. STAT. § 973.01(2)(b)3., 4., 7. (2013-14).

"formed part of the basis for the sentence." **State v. Travis**, 2013 WI 38, ¶28, 347 Wis. 2d 142, 832 N.W.2d 491 (citation omitted).

¶61 As noted, in this case, Hailes fails to point to anything in the record indicating that the circuit court actually relied on the penalty enhancers at the time of sentencing. *See id.*, ¶32 (discussing actual reliance and describing at least four references by the circuit court to the inaccurate penalty at the time of sentencing). As stated above, the circuit court never mentioned the penalty enhancers at the time of sentencing, and a review of the sentencing hearing indicates that the circuit court was focused on protecting the community at the time of sentencing. Moreover, the sentence that the circuit court imposed did not include an enhanced term of imprisonment. As previously noted, Hailes was sentenced to twenty-three years of imprisonment, composed of fourteen years of initial confinement and nine years of extended supervision. At sentencing, he faced a maximum term of imprisonment of ninety-five years on the charges to which he pled guilty, without any of the penalty enhancers. As it applies to initial confinement alone, Hailes faced a maximum term of initial confinement of fifty-five years, without any of the penalty enhancers. The fact that the circuit court sentenced him to only fourteen years of initial confinement shows that the court did not actually rely on the penalty enhancers at the time of sentencing and further shows that the court would have imposed the same sentence absent the error regarding the penalty enhancers. Accordingly, we conclude that Hailes' claim for resentencing fails.[14]

---

[14] As a result of our conclusion, we do not address Hailes' argument that his trial counsel was ineffective for failing to object the penalty enhancers at the time of sentencing or the State's argument regarding forfeiture. *See* **Blalock**, 150 Wis. 2d at 703 ("[C]ases should be decided on the narrowest possible ground.").

## CONCLUSION

¶62 Overall, we conclude that Hailes is not entitled to the relief he seeks, and we affirm. We conclude that the circuit court properly denied Hailes' motion to suppress. In this regard, we conclude that the affidavits attached to the search warrants established probable cause to search the two apartments located at 30th Street. We also conclude that, under the plain language of WIS. STAT. § 973.01(2)(c), only one of the penalty enhancers found in WIS. STAT. § 939.62(1) and WIS. STAT. § 961.48 can be applied to a defendant at a time. However, we nevertheless conclude that Hailes is not entitled to plea withdrawal, sentence modification, or resentencing in his case. Accordingly, we affirm.

*By the Court.*—Judgment and orders affirmed.